Syllabus.

96  649
98  542
1  96  649
1  99  574
96  649
07   53
96  649
f110  134

# Richmond.

## HOTCHKISS, TRUSTEE, v. MIDDLEKAUF AND OTHERS.

### JANUARY 12, 1899.

Absent, Riely and Cardwell, JJ.

1. POWERS OF ATTORNEY—*Strictly Construed—Sale of Land under a Power to Recover—Requisite of Power to make a Deed.*—A power of attorney which simply authorizes the attorney to demand and receive all real and personal property of the principal does not confer authority to sell and convey his real estate. Powers of attorney are construed strictly, and, though the intention of the parties is to be considered in construing the language used, the authority of the attorney is never considered to be greater than that warranted by the language of the instrument, or indispensable to the effective operation of such authority. Authority to execute a deed must be by deed.

2. CHANCERY JURISDICTION—*Sale of Lands out of State—Power to Compel Conveyance of Lands out of State.*—Real estate is exclusively subject to the laws and jurisdiction of the courts of the State in which it is located. Courts of equity in one State cannot decree the sale of lands of a person under disability lying in another State. In cases of fraud, trust, or contract, however, courts of equity having jurisdiction over the parties, may administer full relief, without regard to the nature or situation of the property, and may even compel the conveyance of property which lies beyond its jurisdiction, provided it can enforce its decree by the exercise of its powers over the persons before it. It is no violation of the sovereignty of one State for a court of equity of another State to compel a party before it to do an act which, if done voluntarily anywhere, would not be such violation.

3. RATIFICATION— *Confirmation—Waiver.*—Ratification and acquiescence imply knowledge, and no man will be held to have waived rights of which he was ignorant, nor to have ratified a deed when ignorant of its existence, and of the circumstances attending its execution.

VOL. XCVI.—82

4. DEEDS—*Tax-Title.*—A deed from a clerk of the County Court conveying
   to a purchaser land sold for taxes conveys only such title as was vested
   in the party assessed with the taxes on account whereof the sale was
   made.

Appeal from a decree of the Circuit Court of Rockingham
county pronounced November 2, 1895, in a suit in chancery
wherein the appellee, Samuel Middlekauf, and others were the
complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*J. J., L., & R. Bumgardner*, for the appellant.

*O. B. Roller, J. B. Stephenson, Charles Curry*, and *John E.
Roller*, for the appellees.

KEITH, P., delivered the opinion of the court.

Hotchkiss, trustee, brought an action of ejectment in the
Circuit Court of Rockingham county against Samuel Middle-
kauf and others to recover 5,000 acres of land lying in said
county. Before this cause was tried, the defendants filed a
bill in chancery in which they allege that the 5,000 acres,
which is the subject-matter of the ejectment suit, was part of
a larger tract of land originally granted by the Commonwealth
on the 8th of February, 1796, to one Gambill, and that by
virtue of certain deeds they have become the owners of the
land in controversy, and have thus become "joint owners"
with the plaintiff in ejectment in the proportion which the
5,000 acres bears to the whole of the original patent, the title
to the residue of which they concede is in Hotchkiss, trustee.
In accordance with the prayer of the bill, proceedings in the
action of ejectment were enjoined, and the chancery cause
coming on to be heard upon the bill, answer, exhibits, deposi-
tions, and the report of the commissioner in chancery, to

whom it had been referred, the court decreed "that the complainants * * * be quieted in their possession and ownership of the 5,000 acres of land known as the Hill survey, upon the terms indicated in the report of Commissioner Liggett." The cause is before us upon an appeal from that decree.

Appellant urged upon the court that there was error in the decree for the reason, among others, that the bill was to be taken as claiming a tenancy in common upon the part of the plaintiffs with the defendants, while the decree was in favor of the plaintiffs for an ascertained tract of 5,000 acres. But, without entering upon any discussion of that and other technical objections taken to the proceedings in the Circuit Court, we shall content ourselves with an enquiry into the title presented for our consideration by the appellees, and endeavor to ascertain whether they have shown any right whatever to the real estate in controversy.

Their alleged title, like that of the appellant, begins with the grant from the Commonwealth of Virginia to Matthew Gambill, dated February 8, 1796, and the chains of title of appellant and appellees are coincident until the deed from States Wilkins and Geo. F. Butler, attorney in fact, and committee of Helen Hawkesworth, to James R. Mount, is reached.

Appellees claim under a deed to James R. Mount from Geo. F. Butler, claiming to act as the attorney in fact of States Wilkins, and as committee of Helen D. Hawkesworth, a lunatic. Placing the title by this means in James R. Mount, they deduce it through him to Prosper Knowlton; and as to the land of Prosper Knowlton, appellees claim that it was sold for taxes and conveyed by Littleton W. Gambill, clerk of the County Court of Rockingham, to one John N. Hill, of said county, by deed dated the 5th of December, 1857. By Hill it was conveyed to J. D. Price, by deed of the 7th of April, 1866, and from him, by several deeds shown in the record and not disputed, it is vested in the appellees. The deed to Mount was, as we have seen, executed by George F. Butler, as attorney in fact for States Wilkins and committee of a lunatic, and his

Opinion.

power and authority, both as attorney in fact and as committee, are denied by the appellant.

The authority to execute a deed must be by deed, "for the law requires that the power of attorney to execute a deed should be in writing, and of the same solemnity as the deed itself; * · * * * * and the authority of the agent should be co-extensive with the act to be done, and the instrument clothing him with the authority as complete as the deed which he is to give." 1 Devlin on Deeds (2 Ed.), sec. 356.

The following power of attorney is exhibited with the record : "Know all men by these presents,

"That I, States Wilkins, of the city of New York, have made, constituted, and appointed, and by these presents do make, constitute, and appoint my friend, George F. Butler, of said city, my irrevocable, true and lawful attorney for me, and in my name, place and stead, to ask, demand and receive of, and from any person or persons, all such real and personal estate as I may be entitled to, by virtue of my being a son and heir at law of Jacob Wilkins and Ann his wife, late of the city of New York, deceased; and I do hereby irrevocably authorize and empower the said George F. Butler to commence and prosecute in my name any suit or suits in that behalf, and to compromise or settle or compound the same or either of them, from time to time, as he may deem proper, with full power of substitution, irrevocably giving and granting unto my said attorney, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done, in and about the premises, as fully to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

"In witness whereof, I have hereunto set my hand and seal the 29th day of October, in the year of our Lord one thousand eight hundred and thirty-four.

                         "STATES WILKINS." [L. S.]

Powers of attorney are strictly construed.  "While the general rule governing the interpretation of all contracts or written instruments, that the intention of the parties is to be considered in construing their language, applies to the construction of powers of attorney, yet powers of attorney are construed strictly, and the authority is never considered to be greater than that warranted by the language of the instrument, or indispensable to the effective operation of such authority.  Powers of attorney are, ordinarily, subject to a strict construction; or rather the authority given is not extended beyond the meaning of the terms in which it is expressed."  1 Devlin on Deeds (2 Ed.), sec. 358.

The power of attorney under consideration nowhere authorizes the agent to sell and convey.  He is empowered "to demand and receive of and from any person or persons all such real and personal estate" as States Wilkins may be entitled to as son and heir at law of Jacob Wilkins and Ann his wife.

Just such an instrument came under consideration before the Court of Civil Appeals of Texas.  Said the court: It was "found as a conclusion of law that the power of attorney from Parsons and wife to Duncan, Morgan, and Adams did not authorize them to sell the land in controversy.  The court did not err in this conclusion.  The power conferred was 'to bring suit for, settle up, compromise, release, obtain, or recover the interest belonging to and owned by Louisa C. Parsons,' etc. The power is not given to sell and convey.  Powers of attorney are strictly construed, and the extent of authority must be ascertained from the terms of the instrument itself."

So far, therefore, as George F. Butler undertook to convey as attorney in fact of States Wilkins, his deed is a nullity, because the authority under which he assumed to act conferred no power to execute such an instrument.  George F. Butler and States Wilkins were appointed a committee of Helen D. Hawkesworth, a lunatic, by order of the Chancery Court of

the State of New York on the 23d of May, 1836, and on the
8th of August of the same year, upon the petition of George
F. Butler, stating that Helen D. Hawkesworth was interested
in two large tracts of land in the counties of Rockingham, Albe-
marle, and Orange, in the State of Virginia, that the lands were
entirely unproductive, that there was no prospect of their
improving in value, that it was to the interest of the lunatic
that her interest should be sold, and praying for authority to
sell the same, it was referred to one of the masters of the court
to ascertain whether it would be advantageous or beneficial to
the said lunatic that all her right, title, and interest in the land
should be sold.    The master was required to report with all
convenient speed.    He obeyed the order by submitting a
report of even date with the order itself, in which he states that
the land consists of about 20,000 acres; that it is not worth
five cents per acre, and he does not believe it could be sold for
any price in cash; that one half of it belongs to the lunatic;
and that, if it is not disposed of, it will probably be sold for
taxes.    Upon these facts he is of opinion that it would be
advantageous and beneficial to Helen D. Hawkesworth, the
lunatic, that all her right, title, and interest in said land be
sold.

The proceedings in the courts of the State of New York by
which Helen D. Hawkesworth was adjudged a lunatic, and
George F. Butler was appointed her committee and authorized
to sell her land in the State of Virginia, and the deed executed
by him in conformity with and obedience to that order, consti-
tute the only authority with which Butler was clothed to divest
the title of Helen Hawkesworth, and transmit it to his grantee.
Nor is it pretended that there is any other deed from her upon
which the title of appellees to the land, of which she was
seised, can rest.    It is settled law that real estate is exclusively
subject to the laws and jurisdiction of the courts of the nation
or State in which it is located.    No other laws or courts can
affect it.    Story's Conflict of Laws, sec. 591, and it was said

by Chancellor Zabriskie in *Davis* v. *Headley*, 7 C. E. Green 115: "I find no case in which a statute, judgment, or proceeding in one country has been held to affect such property when situate in another country, or beyond the jurisdiction of the sovereign or court making the statute or decree." It is true "that in cases of fraud, trust, or contract, courts of equity will, whenever jurisdiction over the parties has been acquired, administer full relief without regard to the nature or situation of the property in which the controversy had its origin, and even where the relief sought consists in a decree for the conveyance of property which lies beyond the control of the court, provided it can be reached by the exercise of its powers over the persons and the relief asked is of such a nature as the court is capable of administering." *Wimer* v. *Wimer*, 82 Va. 901, and authorities there cited.

Between these two propositions there is not the slightest conflict. The decree of the court does not operate *ex proprio vigore* in the foreign State or Territory, but, having jurisdiction over the person, it will, in cases of fraud, trust, or contract, compel the party within its jurisdiction to obey its decree. As was said by Chancellor Wythe in *Farley* v. *Shippen*, Wythe's Reports, 135, "if an act performed by a party in Virginia, who ought to perform it, will be effectual to convey land in North Carolina, why may not a court of equity in Virginia decree that party, regularly brought before that tribunal, to perform the act? Some of the defendant's counsel supposed that such a decree would be deemed by our brethren of North Carolina an invasion of their sovereignty. To this shall be allowed the force of a good objection, if those who urge it will prove that the sovereignty of that State will be violated by the Virginia court of equity decreeing a party within its jurisdiction to perform an act there, which act voluntarily performed anywhere, would not be such a violation." In the last clause above quoted is to be found the very kernel of the matter. A foreign court can compel a party within its juris-

diction to do an act in Virginia, which act, if voluntarily performed by such party, would not violate the sovereignty of this State. If Helen Hawkesworth had been of sound mind, and had voluntarily conveyed the property in question, it would have been a valid act—valid everywhere. So, if she had, as a result of contract, trust, or fraud, been under obligation to convey this property, the court of New York, having jurisdiction over her, could have compelled obedience to its decree, and that act which she could voluntarily have performed would have been equally valid though done under the compulsion of a decree of a foreign court. But here we have no such case. Helen Hawkesworth was a lunatic. She has made no deed, and was under no obligation, by contract or otherwise, to make a deed. The authority with which Butler, her committee, was clothed is derived, not from her but from the laws of New York, and the act of her committee derives its whole vitality from the judgment of the court which clothed him with power as her committee, and, upon his petition, decreed the sale of the property of the lunatic lying beyond its jurisdiction and within the limits of this State.

We are of opinion that the deed to James R. Mount from George F. Butler, as attorney in fact for States Wilkins and as committee of Helen D. Hawkesworth, was ineffectual to convey the land in controversy. Nor do we think that any efficacy is imparted to it by the subsequent conduct of States Wilkins and of Mrs. Furman, the daughter and heir at law of Helen Hawkesworth, even if the deed of Butler as committee is to be considered as a voidable, and not as a void act. Ratification and acquiescence imply knowledge, and there is no proof in this record that the circumstances relied upon as a ratification of, or acquiescence in, the assumption, upon the part of George F. Butler, of authority to execute the deed to Prosper Knowlton were performed, with knowledge on the part of Wilkins and Mrs. Furman, of the existence of that deed and the circumstances attending its execution.

As was said by Judge Harrison in *Wilson* v. *Carpenter*, 91 Va.

192: " Confirmation must be a solemn and deliberate act. * * * * No man can be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights, and intends to waive them, must' plainly appear."

As we have seen, appellee's title, flowing from the deed of Butler to James R. Mount, passed from him to Prosper Knowlton, and, he being delinquent in the payment of taxes, it was sold by the State, and a deed made by L. W. Gambill, clerk of Rockingham county, on the 5th of December, 1857.

What has been said with reference to the deed of George F. Butler, in his double capacity of attorney in fact and committee, renders it unnecessary to say anything with respect to the deed from L. W. Gambill, further than to remark that it conveyed only such title as was vested in Prosper Knowlton, who had no title and could therefore transmit none.

Nor need we consider whether this tax deed could be, under the circumstances, regarded as constituting color of title, for there is no evidence of adversary possession by force of which color or claim of title could ripen into a good title.

Nor do we deem it proper to enquire into the title of appellant, nor to express any opinion with respect thereto.

We are of opinion, for the reasons stated, that the decree of the Circuit Court should be reversed, the injunction awarded dissolved, the bill dismissed, and the appellants left to prosecute . their action of ejectment in the Circuit Court of Rockingham county without prejudice to the rights of the parties, plaintiff and defendant, to that suit, except in so far as we have found it necessary in this opinion to pass upon the validity of the deed to James R. Mount from George F. Butler, as attorney in fact for States Wilkins and as committee of Helen D. Hawkesworth.

*Reversed.*