Present: Hassell, C.J., Koontz, Kinser, Lemons, and Agee,
JJ., and Carrico and Russell, S.JJ.

SHARON D. JONES, ET AL.

OPINION BY
v.  Record No. 061086       JUSTICE LAWRENCE L. KOONTZ, JR.
                                     JUNE 8, 2007

RENEE S. BRANDT, EXECUTRIX OF THE ESTATE
 OF WARREN DEAN DAVIS, SR., DECEASED

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge


     This is an interlocutory appeal, taken pursuant to Code

§ 8.01-670(B)(2), from an order entered in a chancery case in

which an executrix of a certain will sought the aid and

direction of the Circuit Court of the City of Virginia Beach

regarding the distribution of an estate.  The sole issue is

whether the circuit court erred in finding that an attorney-

in-fact had the authority, by the durable power of attorney

under which he acted, to change the beneficiary of a

particular certificate of deposit belonging to his principal.

BACKGROUND

     The material facts are undisputed.  W. Leigh Ansell

(Ansell), an attorney practicing in Virginia Beach, had

represented Warren Dean Davis, Sr. (Davis) for many years.  At

Davis' request, Ansell prepared a durable power of attorney

appointing Ansell attorney-in-fact to act for Davis.  Davis

acknowledged the document on April 8, 2004.  The power of

attorney contains very broad powers, including the power to make gifts, but lacks a specific grant of power to make a change of beneficiaries of the principal's certificates of deposit.

Renee S. Brandt (Brandt), a widow, lived with Davis from 2002 until his death on September 30, 2004. Davis was in failing health during his last year. In accordance with Davis' directions, Ansell prepared a will that Davis executed within a few days of signing the power of attorney. The will appointed Brandt trustee and executrix but gave her no interest in Davis' estate except the right to occupy and use the home in which they had lived, along with all personal property therein, rent-free, "so long as she lives in the premises." The residual beneficiaries under the will, subject to the occupancy rights of several named tenants and a one-dollar legacy to Davis' son, were his two daughters, Sharon D. Jones and Jody Ann Davis.[1] Davis, who personally handled his own estate planning, told Ansell that he intended to "take care of [Brandt] outside of this will."

On August 4, 2004, Davis orally directed Ansell to designate Brandt as the beneficiary "payable on death" (POD) of a certificate of deposit in the amount of $250,000, which

---

[1] Jody Ann Davis appeared in this suit as Jody Davis Clark.

was in Davis' name at the Pungo branch of Wachovia Bank. Ansell went to the bank the same day and executed such a POD designation, signing it "Warren Dean Davis, Sr. by: W.L. Ansell, POA." The certificate of deposit previously had named no beneficiary other than Davis, its owner. The next day, Ansell advised Davis by letter, which included a copy of the beneficiary designation, that he had complied with Davis' direction.

After Davis' death, Brandt qualified as executrix under Davis' will and brought this suit in chancery for aid and direction in the distribution of the estate, naming all parties in interest, including herself in her individual capacity, as defendants. The circuit court heard evidence ore tenus and ruled that the designation of Brandt as the beneficiary POD was valid and that the proceeds of the certificate of deposit were payable to her individually. We awarded this interlocutory appeal to Davis' daughters, Sharon Jones and Jody Clark.

DISCUSSION

Because the sole issue on appeal is the legal effect of a written document, we review the issue de novo. Perel v. Brannan, 267 Va. 691, 698, 594 S.E.2d 899, 903 (2004).

Brandt concedes that the power of attorney did not expressly grant Ansell the authority to change the beneficiary

of Davis' certificate of deposit at Wachovia Bank, but points

to the following provisions of the power of attorney as

granting such power by necessary implication:

3.   To sign, endorse or assign any note, check or
other instrument of any nature whatsoever,
negotiable or non-negotiable, for deposit, discount,
collection or otherwise;

4.   To open accounts, make deposits, write checks
upon or otherwise withdraw some or all funds or
account balances now or hereafter outstanding to my
credit or to the credit of my attorney, whether or
not the check or other instrument is drawn to the
order of my attorney;

. . . .

10. To instruct any entity or person having custody
or control of any assets of mine, or any assets in
which I may have an interest, in any agency,
fiduciary or other capacity, and I authorize that
person or entity to rely upon such instructions;

. . . .

13. To make, sign, acknowledge and deliver any
contract, deed or other document relating to real
estate or personal property or both and to perform
any contract binding either me or my attorney;

. . . .

24. It is my intention that the grant herein of
power to my attorney-in-fact be as broad as possible
and the list above of specifically enumerated powers
shall not be construed or interpreted to narrow the
granted powers but rather they are meant to indicate
my intention to grant as broad a grant of power as
possible, and this Power of Attorney should be
broadly construed to accomplish this intention.

25. Without limiting the above powers, generally to
perform any other acts of any nature whatsoever,
that ought to be done or in the opinion of my

4

attorney ought to be done, in any circumstances as fully and effectively as I could do as part of my normal, everyday business affairs if acting personally.

Initially, we note that this is not a case of an attorney-in-fact, under a durable power of attorney, engaging in self-dealing with regard to his principal's personal property. Indeed, there is no suggestion of fraudulent conduct by the principal's agent. Nor is this a case involving the authority of an attorney-in-fact, under a durable power of attorney, to make a gift of his principal's personal property. The beneficiary designation of the certificate of deposit in question did not become a final disposition of Davis' certificate until his death on September 30, 2004 and conveyed no present interest in the certificate, but only at best an expectancy. Consequently, neither Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir. 1991), upon which the appellants principally rely, nor the provisions of Code § 11-9.5 resolve the issue presented in this case.

There is no dispute that in directing Ansell's actions to designate Brandt as the beneficiary POD on this certificate of deposit, Davis acted to accomplish, at least in part, his previously expressed intent to "take care of [Brandt] outside of [his] will." Undoubtedly, Davis and Ansell considered the provisions of the power of attorney sufficient to authorize

5

Ansell to act in accord with Davis' direction to Ansell with regard to designating Brandt as the beneficiary of Davis' certificate of deposit.  Nevertheless, the appellants assert that without express language in the power of attorney granting Ansell the authority "to change the beneficiary of the certificate of deposit," Ansell's act in doing so was a nullity.  We disagree.

In Virginia, powers of attorney have been strictly construed for over a century.  The authority granted by such an instrument is never considered to be greater than that warranted by its language, or indispensable to the effective operation of the authority granted.  The authority given is not extended beyond the terms in which it is expressed. Hotchkiss v. Middlekauf, 96 Va. 649, 653, 32 S.E. 36, 37-38 (1899).

This general rule of construction essentially provides that expansive language, such as that contained in paragraphs 24 and 25 of the power of attorney in this case, should be interpreted as intending only to confer those incidental powers necessary to accomplish objects as to which express authority has been given to the attorney-in-fact.  Id.  The policy that supports this rule of construction is that the power to dispose of the principal's property is so susceptible of abuse that the power should not be implied.  That abuse of

the agent's power is particularly dangerous in a case involving a durable power of attorney, which by its nature remains in effect after the principal has become incapable of monitoring the agent's conduct. We do not retreat from the rationale of these guidelines of construction.

However, in this case we are not concerned with the power to make a gift or to transfer the principal's property but, rather, the power to contract on behalf of the principal. Among the 35 numbered paragraphs included in Davis' power of attorney, paragraph 3 authorized Ansell "[t]o sign, endorse or assign any note, check or other instrument of any nature whatsoever, negotiable or non-negotiable, for deposit, discount, collection or otherwise." A certificate of deposit is an instrument for deposit. Additionally, paragraph 13 authorized Ansell "[t]o make, sign, acknowledge and deliver any contract . . . or other document relating to . . . personal property." A certificate of deposit including the designation of the beneficiary POD thereon is a contract between the depositor and the bank relating to personal property.

It is highly doubtful that every power of attorney, even as in this case one carefully drawn by a skilled draftsman, will always expressly confer the authority necessary to address every specific circumstance in which the principal

7

nevertheless intends to give authority to the attorney-in-fact. Undoubtedly, standard provisions granting broad general power to the agent are intended by the principal to become applicable so as to avoid any potential unintended limitation in the authority expressly granted. Such is the case here as evidenced by the language in paragraph 25, stating that "[w]ithout limiting the above powers, generally to perform any other acts of any nature whatsoever, . . . in any circumstances as fully and effectively as I could do as part of my normal, everyday business affairs if acting personally." Surely, the change of a beneficiary designation on a certificate of deposit is an act within "the normal, everyday business affairs" of the owner of a certificate of deposit at a bank.

The very nature of the task of interpreting language in a document is a fact specific one. Here, we are called upon to determine the intent of the principal with regard to the beneficiary designation of the principal's certificate of deposit. We are of opinion that Davis, the principal, sufficiently expressed the intent to authorize Ansell, the attorney-in-fact, to make a change in the beneficiary designation under the provisions of paragraphs 3, 13, and 25 of the power of attorney when those provisions are considered in concert.

The appellants place considerable weight on the fact that paragraph 21 of the power of attorney expressly grants the attorney-in-fact the power to change the beneficiary on an IRA or employee benefit plan and the fact that paragraph 22 expressly grants the attorney-in-fact the power to select the beneficiaries of any insurance policies and any pension, profit sharing, stock ownership, or other retirement plans to conclude that no power to change the beneficiary of a certificate of deposit was intended by Davis. Of course, all of these enumerated financial instruments or arrangements are entirely distinct financial matters from a certificate of deposit. Thus, it is a reasonable assumption that Davis felt it necessary to expressly address his intent with regard to them, while operating under the equally reasonable assumption that his intentions were adequately addressed in other paragraphs with regard to any other instrument of any nature "for deposit" and any "contract" for personal property.

CONCLUSION

For these reasons, we hold that the circuit court did not err in finding that Ansell was authorized to designate Brandt as the beneficiary POD of Davis' certificate of deposit at

Wachovia Bank.  Accordingly, the judgment of the circuit court

will be affirmed.[2]

                                                    Affirmed.

SENIOR JUSTICE RUSSELL, with whom CHIEF JUSTICE HASSELL and
JUSTICE AGEE join, dissenting.

     The majority opinion correctly notes that powers of

attorney are strictly construed in Virginia, citing Hotchkiss

v. Middlekauf, 96 Va. 649, 32 S.E. 36 (1899).  That case stood

for the proposition that the authority given is not extended

beyond the terms in which it is expressed, and that broad,

sweeping language in such an instrument will be interpreted as

intending to confer only those incidental powers necessary to

accomplish objects as to which express authority has been

given to the attorney-in-fact.  Id. at 653, 32 S.E. at 37-38.

The majority opinion goes on to express, correctly, the policy

reason underlying that rule of strict construction: "the power

to dispose of the principal's property is so susceptible of

abuse that it should never be implied."

---

     [2] Although not addressed by the circuit court or raised by
the parties in this appeal, we note that the doctrine of
ratification would apply on the facts of this case even if the
language of the power of attorney was not sufficiently
specific to have permitted Ansell to make the change in
beneficiary on the certificate.  The record plainly shows that
Davis orally directed Ansell to act as his agent in the
matter, and that Davis, when advised by Ansell that he had
carried out that direction, accepted the fact of performance
without objection.  See, e.g., Higginbotham v. May, 90 Va.
233, 238-39, 17 S.E. 941, 943 (1893).

10

Indeed, such a power is particularly dangerous in a case such as this, where a durable power of attorney was given by a person in declining health, where the power remained in effect after the principal had become incapable of monitoring the agent's conduct, where the agent employed the power to dispose of the principal's property at a time when the principal, a month before his death, was gravely ill, and where the court, later weighing the agent's conduct, could rely only upon the agent's uncorroborated, self-serving testimony because the principal was by then deceased.

Here, Ansell's testimony is the only source in the record for a finding that Davis expressed an intention to "take care of [Renee Brandt] outside of [his] will." Ansell is the only source for a finding that Davis ever asked him to make her the beneficiary "P.O.D." of the certificate of deposit. Ansell is the only source for a finding that he had written a letter to Davis the day after making the change of beneficiary, to which Davis had not replied. Ansell testified that he was alone with Davis when Davis orally expressed his intention to take care of Renee Brandt outside his will. He testified that when Davis orally asked him to change the beneficiary, he had met Davis at "Doctor Berger's office" and that Davis was "very ill at that time. Mr. Lawless and a friend of his had to help him get into a wheelchair and get into the doctor's office."

11

Although these potential witnesses might have corroborated Ansell's account of this oral exchange, neither was called to testify. Similarly, Ansell's testimony that he had promptly confirmed his action by a letter to Davis, is entirely uncorroborated. Neither the original letter nor Ansell's file copy was ever offered in evidence.

Ansell may very well have been a truthful witness, acting in faithful obedience to his principal's instructions. He may well have had no connection with Renee Brandt, nor any desire to confer a benefit upon her. He may well have had no intention to obtain an indirect benefit for himself. Nevertheless, if the state of the law is such that an agent of a very different kind may give his principal's property to a person selected by the agent, exceeding his explicit written authority, and thereafter justify his act by his own self-serving and uncorroborated testimony, the danger is too obvious to require discussion.

In Estate of Casey v. Commissioner, 948 F.2d 895 (4th Cir. 1991), the United States Court of Appeals for the Fourth Circuit considered a case in which an attorney-in-fact made gifts under broad general powers contained in a power of attorney that lacked an express grant of the power to make gifts. Applying Virginia law, that Court observed: "[T]here is a wise general rule of construction that we are satisfied

12

the Virginia Court would follow.  It is, in effect, that such expansive language should be interpreted as intending only to confer those incidental, interstitial powers necessary to accomplish objects as to which authority has been expressly conferred."  Id. at 901 (citing Hotchkiss).

In the present case, as there was in Casey, there is an additional factor leading to the conclusion that the principal did not intend to confer the power exercised by the attorney-in-fact.  Paragraph 21 of Davis's power of attorney provides that Ansell is authorized:

> To create and contribute to an IRA or employee benefit plan (including a plan for a self-employed individual) for my benefit; to select any payment option under any IRA or employee benefit plan in which I am a participant, (including plans for self-employed individuals) or to change options I have selected; to make and change beneficiary designations; to make voluntary contributions to such plans; to make "roll-overs" of plan benefits into other retirement plans;

The following paragraph explicitly grants the attorney-in-fact the power "To select . . . the beneficiaries of any insurance policies and any pension, profit sharing, stock ownership, or other retirement plans."

Having explicitly included the power to change or select beneficiaries on the assets specifically named above, the absence of a power to change beneficiaries as to other assets was a glaring omission on the principal's part.  He knew how

13

to confer such an express power, but declined to extend it to certificates of deposit. Applying the rule that the instrument is assumed to represent the entire understanding of the parties, I conclude that no power to change the beneficiary of a certificate of deposit was intended by Davis.

In 1992, in the wake of the Casey decision, the General Assembly enacted Code § 11-9.5, relating to gifts under powers of attorney. Subsection A of the statute expressly authorizes an attorney-in-fact to make gifts of the principal's property under general powers, but only to individuals or charitable organizations qualified under the Internal Revenue Code, and only "in accordance with the principal's personal history of making or joining in the making of lifetime gifts." Subsection B provides that Subsection A shall not affect a power to make gifts that the principal has, in the power of attorney, set forth by "express words." Subsection C provides a procedure under which an attorney-in-fact under a durable power of attorney may petition the circuit court for authority to make gifts of the principal's property "to the extent not inconsistent with the express terms of the power of attorney."

Code § 11-9.5 is not applicable to the present case because Renee Brandt is not a charity, there is no record or claim of a personal history of lifetime gifts from Davis to her, and the power of attorney contains no express words

authorizing the attorney-in-fact to designate her as beneficiary of the certificate of deposit.  Nevertheless, the statute is a clear demonstration of legislative approval of the "wise general rule" articulated in Casey, subject only to the narrowly defined exceptions set forth in subsection A, relating to charities.

The majority opinion appears to distinguish this case from Casey on the theory that here the agent's P.O.D. disposition of the principal's property transferred "only at best an expectancy," while in Casey the agent made gifts inter vivos.  That theory assumes that Davis was aware of Ansell's act and was capable of undoing it during his remaining lifetime.  In view of Davis' physical condition and impending death at the time Ansell acted, I consider that theory to be a distinction without a difference.

I think it unfortunate that the majority has failed to adopt the "wise general rule" expressed in Casey and has, by reading into a power of attorney authority greater than that explicitly expressed, departed from a century of precedent. Therefore, I respectfully dissent.