# CIRCUIT COURT OF FAUQUIER COUNTY

Jean Mountjoy,
Executrix, et al.

v.

Carol Smith,
Executrix, et al.

February 26, 2009

Case No. CL08-300

BY JUDGE JEFFREY W. PARKER

This matter comes before the Court upon Cross-Motions for Summary Judgment. This case was initially filed on May 1, 2008, by Theodore M. Smith against Carol Smith, Substitute Trustee of the Theodore M. Smith *inter vivos* Revocable Trust and Executrix of the Estate of Evelyn Smith. Evelyn Smith was Mr. Smith's wife, and she died on July 21, 2007.

Before this matter could be adjudicated, Mr. Smith died on November 20, 2007, and Jean Mountjoy was substituted as Executrix for Mr. Smith. The Plaintiff seeks relief on two counts. In Count I, Mr. Smith's Executrix alleges Evelyn Smith breached the fiduciary duty owed Mr. Smith under a power of attorney executed by Mr. Smith. In Count II, Mr. Smith's Executrix seeks detailed relief under the statutory election law contained in Title 64.1 dealing with augmented estates.

*Background*

After reviewing the briefs and hearing argument, the Court advised the parties that it had insufficient evidentiary information to afford the parties a complete adjudication of all the issues. However, the Court believed it could

effectively address the question of the validity of the Durable Power of Attorney. The validity of the Durable Power is a threshold issue in this case, and the determination of this matter will not only shorten the time presently allotted for trial but will result in a refocusing of the issues as well.

As both parties understand, the Court can only consider facts not materially in dispute. In that respect, the Court will identify the following established material facts.

1. The parties were married in 1946 and remained married until their death.

2. In May 2005, Mr. Smith had a massive heart attack placing him in a weakened physical condition but still *sui juris*.

3. On May 19, 2006, Mr. Smith executed a Durable Power of Attorney (DPOA) naming Mrs. Smith as his attorney-in-fact. This Power was part of the record.

4. The DPOA contained five paragraphs granting specific powers, but no specific authority on the part of the wife to create a trust.

5. The DPOA also contained two paragraphs dealing with general powers as follows:

> (6) I grant to my said agent full power and authority to do and perform all and every act, deed, and thing whatsoever in and about my estate, property, and affairs as fully as I might or could do if present and acting.

> (7) This instrument is to be construed and interpreted as a general power of attorney. The enumeration of specific items, rights, acts, or powers herein does not, and shall not, in any way control, limit, or diminish the general powers herein granted in order to carry out the purposes expressed.

6. Mr. Smith never directed Mrs. Smith to make an estate plan for him.

7. Without telling Mr. Smith she was making an estate plan, Mrs. Smith arranged for two separate trust documents to be prepared, one for her and for him.

8. Mrs. Smith executed these separate trusts on May 23, 2007. Both are part of the record.

9. The trusts were not mirror images of each other.

10. Mrs. Smith, prior to her death, never told Mr. Smith about the estate plan, which included transferring real properties previously held by them as tenants by the entirety into the trusts thus changing ownership to tenants in common.

11. After discovery of her actions on September 6, 2007, approximately two months after her death, Mr. Smith executed a document terminating the trust in his name established by Mrs. Smith.

12. On September 26, 2008, Mr. Smith, through counsel, made a demand for alleged entitlements existing through Mrs. Smith's trust.

*Analysis*

There is no specific language in the DPOA which authorizes Mrs. Smith to set up an estate plan for Mr. Smith containing a trust benefiting Mrs. Smith. Mrs. Smith's estate argues that the specific powers of the DPOA authorized the fiduciary to negotiate sums of money and enter into contracts and, when coupled with the general agency powers set forth in Paragraphs 6 and 7 of the DPOA, suffice to permit the actions taken by the fiduciary in setting up the trust. This is not the case. "The law in Virginia is that a power of attorney will be strictly construed." *Bank of Marion v. Spence*, 155 Va. 51, 53, 154 S.E. 488 (1930); *Hotchkiss v. Middlekauf*, 96 Va. 649, 32 S.E. 36 (1899).

The Defendant's Wife's estate points to the recent case of *Jones v. Brandt, Executrix*, 274 Va. 131, 645 S.E.2d 312 (2007), to suggest that Virginia has softened its stance on this requirement. However, a careful reading makes *Brandt* distinguishable from this case on its facts. In *Brandt*, the principal of the power directed his fiduciary to designate a third party as a beneficiary under a payable on death provision of an existing bank certificate of deposit. That certificate of deposit had no previous beneficiary designation. The day after completing this action for his principal, the fiduciary provided the principal with a written copy of the designation. The actions of the fiduciary were at the principal's explicit direction.

None of those facts have a counterpart in the case at bar. Here, the Wife first created a trust instrument, and then, she changed the form of ownership of properties held by the trust having named herself as beneficiary of the trust if Mr. Smith died first, but he was *not* the beneficiary of the principal under her trust if she predeceased him. The *Brandt* Court states "we note that this is *not* a case of an attorney-in-fact . . . engaging in self-dealing with regard to his principal's personal property. . . . Nor is this a case involving the authority of an attorney-in-fact . . . to make a gift of his principal's personal property." 274 Va. at 136-37 (emphasis added).

The Court in *Brandt* further observed that both the principal and the fiduciary believed the existing language of the power was adequate to perform the indicated task. This stands in marked contrast to the case *sub judice* where

the actions of the fiduciary were concealed from her principal. There was no attempt by the Court in *Brandt* to weaken the doctrine of strict construction of powers of attorney. The Court simply acknowledged the difficulty for even a "skilled draftsman . . . to address every specific circumstance" which could occur in the course of the relationship. *Id.* at 138.

Here, the actions of the fiduciary secretly creating a fourteen-page *inter vivos* trust in consultation with an estate planning lawyer go far beyond what took place in *Brandt*. "An act done by an attorney-in-fact which is not authorized by the power under which he acts is a nullity." *Bank of Marion, supra* at 53. Mrs. Smith could have sought court approval (or her husband's) for her actions by proceeding under § 11-95 of the Virginia Code, but she took no such action.

Nor is there anything to suggest on these facts that Mr. Smith ratified or acquiesced in the actions of Mrs. Smith. "[A] principal may ratify the voidable acts of his agent and such ratification may be express or implied. And where, after discovery of such acts, the principal, with full knowledge of the facts, acts in such a manner as to unmistakably indicate that he intends to avail himself of the benefits of the contract made by the agent, he will be deemed to have ratified such acts in their entirety." *Piedmont Mt. Airy Guano Co. v. Buchanan*, 146 Va. 617, 625, 131 S.E. 793 (1926).

Mr. Smith never took steps to ratify any of the actions taken by Mrs. Smith. On the contrary, he promptly moved to protect his property rights in light of her unauthorized actions. He terminated his trust. That was *not* ratification. Nor does the letter of his attorney of September of 2008 seeking to protect Mr. Smith's rights under Mrs. Smith's trust constitute ratification of her otherwise improper actions under the DPOA.

Therefore, the Court will grant partial Summary Judgment to the Plaintiff and rule that the Theodore M. Smith *inter vivos* Revocable Trust is void and of no effect. The Court will draft the Order, noting exceptions. This will also have the effect of invalidating the conveyance of the real properties to the Trusts.

In light of the circumstances, the Court believes a second pretrial conference should occur forthwith prior to trial presently set for the 11th of March.