COURT OF APPEALS OF VIRGINIA

Present:  Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia

UNPUBLISHED

TODD PUCKETT

MEMORANDUM OPINION[*] BY
v.        Record No. 1117-22-3              JUDGE FRANK K. FRIEDMAN
                                            SEPTEMBER 19, 2023

TAMARA SENGER

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Anne F. Reed, Judge

Juliet M. Bates (Bates Law PLLC, on brief), for appellant.

Tracy J. Evans, II (Evans Oliver, PLC, on brief), for appellee.


This domestic relations appeal involves disturbing facts, interpretation of a rather

complicated pre-nuptial agreement, and a bevy of rulings arising from the couple's divorce and the

husband's felonious misconduct.  The trial court did a thorough and commendable job of sorting out

this dispute.  We affirm the vast majority of rulings—but reverse two property awards involving

items that constituted husband's separate property via inheritance.

BACKGROUND

Todd Puckett appeals a final decree of divorce entered by the Augusta County Circuit Court.

In 2009, Puckett and Tamara Senger entered into a premarital agreement that addressed spousal

support, separate property, waivers, household bills, property acquired during the marriage,

retirement benefits, and attorney fees.  The parties married on May 16, 2009; one child was born to

the couple before the marriage.  Senger had two daughters from an earlier relationship.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

In 2020, Puckett pleaded guilty to 3 counts of aggravated sexual battery of his stepdaughter, who was between the ages of 13 and 17, with offense dates between September 1, 2017 and March 31, 2018; the circuit court convicted Puckett and sentenced him to 15 years on each charge to run concurrently, with 8 years suspended. One month later, Senger filed a complaint for divorce, which she later amended. Senger sought a divorce based on Puckett's felony conviction and sentence exceeding one year. Puckett filed answers to the complaint and amended complaint.

Thereafter, Senger moved for declaratory judgment to determine the parties' rights under the premarital agreement. The parties appeared before the circuit court for a hearing, and the circuit court held that the parties were "legally bound by the terms of their own Agreement." The parties then scheduled a final hearing to resolve the grounds of divorce and the distribution of property. Before trial, the parties submitted a "Joint Statement Regarding Stipulations and Outstanding Issues" which included a lengthy list of property to be awarded. The circuit court analyzed more than fifty contested property items.

The circuit court granted Senger a divorce based on Puckett's felony conviction and sentence exceeding one year. The circuit court interpreted the language of the premarital agreement to resolve the outstanding property issues and incorporated the premarital agreement into the final decree of divorce. When the court divided property between the parties, it ruled that much property that Puckett considered his separate property was to be treated as joint property.

With respect to the division of property, Puckett argued that he purchased numerous possessions from an account that was comprised of his own income, which constituted separate property—and that such purchases should have remained his separate property under the agreement. Senger challenged his testimony—attacking both his credibility and arguing that Puckett's alleged income would not be sufficient to cover all these purchases. Similarly, she argued that Puckett

purchased items using funds from joint accounts. The circuit court generally agreed with Senger as to contested property designations.

Puckett also claimed several items as separate property via inheritance. The court agreed in some instances, but, again, found his evidence insufficient to establish the majority of items claimed as separate property. Puckett claimed two of these items (items 9 and 10 on the list of property) were guns inherited from his father that should have been deemed his separate property. His brother's testimony supported this claim. There was no evidence to the contrary with respect to items 9 and 10. The circuit court, nonetheless, treated these guns as joint property and split their value between the parties.

The court also required Puckett to reimburse a share of Senger's expenses in selling and tending to "joint" properties. Puckett objected that he should not have been required to pay for Senger's efforts to sell the couple's house and maintain their vehicles—and that, in any event, Senger had failed to prove that her efforts in this regard benefited him. The court also awarded child support against Puckett and also found Puckett responsible for costs involving counseling for their daughter. (The pre-nuptial agreement waived spousal support.) The court denied Puckett a recovery of attorney fees. Puckett had claimed an entitlement to fees based on Senger's alleged attempt to recover awards prohibited under the settlement agreement. The court further ruled that the pre-nuptial agreement was not unconscionable.

The circuit court entered the final decree of divorce. Puckett timely appealed. Puckett asserts on appeal that: the circuit court erred in (1) granting Senger a divorce pursuant to Code § 20-91(A)(3) without evidence of Puckett's conviction for a felony and subsequent sentencing to a term of imprisonment for greater than one year, (2) applying the statutory principles of equitable distribution despite an express waiver of statutory remedies in the parties' premarital agreement, (3) requiring written evidence of separate title for property to be separate property under the

- 3 -

agreement, (4) designating certain property as marital property over evidence that the property was separate property, (5) requiring Puckett to pay portions of expenses related to property titled in Senger's sole name contrary to the agreement, and (6) requiring Puckett to reimburse certain costs of Senger without evidence that the costs were the results of actions taken for Puckett's benefit. Puckett also contends the circuit court erred in declining to award him attorney fees. Senger has requested an award of appellate attorney fees. We address each argument in turn.

ANALYSIS

Standards of Review

"On appellate review, a divorce decree is presumed correct and will not be overturned if supported by substantial, competent, and credible evidence." *Gottlieb v. Gottlieb*, 19 Va. App. 77, 83 (1994); *see also Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) ("[A]ll trial court rulings come to an appellate court with a presumption of correctness." (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019))). "Where dual or multiple grounds for divorce exist, the trial judge can use his sound discretion to select the grounds upon which he will grant the divorce." *Fadness v. Fadness*, 52 Va. App. 833, 840 (2008) (quoting *Konefal v. Konefal*, 18 Va. App. 612, 613-14 (1994)). "[T]his Court reviews the circuit court's 'interpretation of the parties' agreement *de novo*.'" *Price v. Peek*, 72 Va. App. 640, 646 (2020) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). "The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Da'Mes v. Da'Mes*, 74 Va. App. 138, 144 (2022) (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)). "Child support decisions . . . 'typically involve fact-specific decisions best left in the "sound discretion" of the trial court.'" *Id.* (alteration in original) (quoting *Niblett*, 65 Va. App. at 624). "It is well-settled that parties may 'adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute.'" *Jones*, 68 Va. App. at

- 4 -

106 (quoting *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006)).  If the parties' agreement "contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law."  *Id.*; *see also Rutledge v. Rutledge*, 45 Va. App. 56, 61-62 (2005).

I.  The Court Did Not Err in Granting the Divorce Based on Puckett's Incarceration

Puckett argues that the circuit court's ruling which granted a divorce on the grounds of incarceration for greater than one year was not permissible and that Senger did not meet her burden of introducing evidence "sufficient to meet her burden of proof under Virginia Code § 20-91(A)(3)."  However, Code § 20-91(A)(3) states a divorce from the bond of matrimony may be decreed

> [w]here either of the parties subsequent to the marriage has been convicted of a felony, sentenced to confinement for more than one year and confined for such felony subsequent to such conviction, and cohabitation has not been resumed after knowledge of such confinement (in which case no pardon granted to the party so sentenced shall restore such party to his conjugal rights).

In this case, Puckett admitted that he had been convicted of a felony and was sentenced to more than one year of incarceration.  The circuit court's November 12, 2020 letter opinion made a finding of fact that Puckett had been convicted of multiple felonies and sentenced to a term of incarceration longer than one year.  Additionally, the circuit court's April 21, 2021 order found that Puckett was convicted of a felony and sentenced to a term of confinement in excess of one year.  The record adequately established that Puckett was convicted of a felony and sentenced to confinement for more than one year; in fact, the proceedings lasted more than a year and Puckett was incarcerated during this time frame.  It follows that the circuit court did not err in granting Senger a divorce pursuant to Code § 20-91(A)(3).

## II. The Circuit Court's Distribution of Property

### A. The Circuit Court Properly Applied the Parties' Agreement, Rather than Equitable Distribution Concepts to the Property Award

Puckett argues that the circuit court erred by applying principles of equitable distribution instead of following the parties' contractual agreement. Despite Puckett's claims to the contrary, the circuit court did not engage in equitable distribution in this case. In its letter opinion dated May 5, 2022, the circuit court specifically found that the premarital agreement fully addressed "all matters of property and related financial obligations." Paragraphs 9 and 17 of the premarital agreement in particular set forth that property acquired through inheritance, or which was purchased during the marriage but with separate funds, will be classified as separate property. The circuit court was required to determine the legal title between the parties and assess the ownership and value of the property. In order to make these findings, the court held an evidentiary hearing. Before the hearing, the parties filed a joint statement and identified pieces of real and personal property which they then categorized as either separate or marital. There are 52 items included in this list and, on appeal, Puckett states he is assigning error to "only 30 of these items as contrary to evidence adduced at trial and an additional six as unsupported by any evidence." While Puckett takes issue with the circuit court's ultimate resolution of many of these property determinations, it is clear that the circuit court employed the parties' agreement in reaching its conclusions. Puckett's claim that the court wrongly utilized equitable distribution concepts is unsupported by the record.

### B. Puckett Claims That Many Items Deemed Marital Property Should Have Been Adjudicated His Separate Property

#### 1. Determinations that are Supported by the Record

Puckett assigns error to multiple items which the court found to be marital property but that Puckett claims should have been deemed his separate property. For example, Puckett claims items 12-15, 17-22, 24-26 and 30-51 should have been deemed his separate property. The circuit court

found that separate title had not been established in favor of Puckett with respect to these items and that this property would therefore remain marital property for purposes of distribution. The circuit court's analysis of the parties' agreement, coupled with the evidence at trial, supports this outcome.

Paragraph 9 of the agreement states:

> Husband and Wife agree that all property, including the property set out in the attached Property and Financial Disclosure, belonging to Husband at the commencement of the marriage and any property acquired by Husband during the marriage by gift, bequest, devise, survivorship, descent, or by any other means, including but not limited to his normal occupation, shall be and remain his separate property.

It further states that: "All separate property of Husband shall be free from any claim or demand by Wife at any time during the marriage or in the event of separation, divorce, or death."

Paragraph 17(a)(1) of the agreement states:

> If there is written evidence of title such as a deed, car title, bank account, etc., then such property shall be owned in accordance with the written evidence of title. If property is jointly titled, it shall be equally owned. If property is individually titled, it shall be the sole property of such party possessing such title.

Section 17(a)(2) states "[i]n the event of a separation of divorce, the division of property shall only be in accordance with the terms of this Agreement."[1]

Senger concedes that:

> When Paragraphs 9 and 17 of the Agreement are taken as a whole, it is clear that the intent of the parties was that: 1) property inherited or received as a gift was separate property; 2) property acquired through the use of a party's personal funds was separate property; 3) property with a title was to be classified according to the title; and 4) absent a classification pursuant to subparts 1-3 above, said property was

---

[1] Additional portions of Paragraph 17 are confusing. These sections discuss the requirement of written title for the division of property and suggest that all joint property acquired during the marriage will be split evenly in the absence of written title. We agree that this language does not apply to separate property. The question here with respect to Puckett's claims is whether he sufficiently proved the disputed property was his separate property.

- 7 -

jointly owned and was to be divided equally amongst the parties in the event of a divorce.

Again, Puckett's main assertion on appeal is that he claims to have bought various items during the marriage with his own money; he then asserts the purchased property should remain his separate property given its source. The problem for Puckett is that the evidence presented at trial failed to convince the factfinder that Puckett is the separate owner of these multiple items of property obtained during the marriage. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Anderson v. Anderson*, 29 Va. App. 673, 686 (1999) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Barker v. Barker*, 27 Va. App. 519, 535 (1998). Puckett failed to produce any bills of sale, titles, wills, bank or credit card statements evidencing his separate ownership of these disputed items. Puckett's evidence at trial regarding the disputed items was generally his own testimony that these items were his separate property. The circuit court noted that it weighed the demeanor and credibility of the parties in making its findings.

Specifically, Puckett testified at trial that he deposited the majority of his paycheck into a joint account with Senger, but that he also auto-debited $100 per month from his paycheck into a separate checking account. Puckett suggested that he used these separate funds to purchase multiple items that he claimed were his separate property: a firearm, an Ontario hatchet and knife, a night vision scope and components, a Weber smoker, woodworking equipment, and a gas-powered pressure washer. Under cross-examination, however, Puckett testified that he also used these funds to make other purchases (such as alcohol); he further testified as to the purchase prices for these allegedly separate items. Senger's cross-examination of Puckett impeached his

testimony that he used his separate funds to purchase all of these disputed items, as he did not show that he had sufficient separate funds to afford to purchase all the items. Senger also testified that Puckett "was consistently getting money from the joint accounts to pay for things that he wanted to purchase." The circuit court as factfinder was entitled to accept Senger's testimony and to question Puckett's credibility and discredit his narrative. There was sufficient evidence to support the circuit court's conclusion that Puckett failed to establish that the vast majority of items which Puckett claimed as separate property were, in fact, derived from his separate funds.

### 2. Items Puckett Proved Were His Separate Property Via Inheritance

The circuit court, however, also found items 9 and 10, guns inherited from Puckett's father, to be marital property which was split between the couple. Here, we disagree with the circuit court. Puckett provided testimony that these firearms belonged to his father. Additionally, supporting testimony by Puckett's half-brother, Paul Baker, further confirmed that item 9, a Benelli Renaissance shotgun, 12 gauge, belonged to his stepfather. Baker further testified that he bought item 10, the JP Sauer and Son three barrel rifle, for his stepfather and that the stepfather owned it prior to his death. While it is true that there is no written document to establish separate title to Puckett regarding these firearms, the testimony from Puckett, corroborated by his half-brother, established that these two guns were acquired through inheritance, and were, accordingly, Puckett's "separate property" under the agreement. This evidence of inheritance was unrebutted. Therefore, items 9 and 10 should have been assessed as Puckett's separate property and it was error to assign them as joint property.[2]

---

[2] Under the agreement, joint property would be appraised and each party would receive 50% credit of its value. On remand, Puckett should receive the full value of these inherited guns that are his separate property.

- 9 -

III. The Circuit Court Did Not Err in Requiring Puckett to Pay Portions of Expenses
    Related to Property Titled Only in Senger's Name

Before Puckett's incarceration, the marital home as well as three vehicles were titled under both parties' names. After Puckett's incarceration, he executed a power of attorney which named Senger as his attorney-in-fact. It was then that Senger retitled these items to only her name, which allowed her to sell and maintain them. Puckett now argues that he should not be contractually obligated for expenses related to the maintenance of these items; he similarly argues that he should not be required to pay his share of the costs borne by Senger associated with the sale of the marital home.

Paragraph 15 of the agreement requires each party to reimburse the other for expenses related to the maintenance of the marital property. Puckett now takes issue with the circuit court's findings that Puckett should be required to reimburse Senger for expenses when title to this property ultimately was not jointly held. Puckett's argument ignores that he requested and enjoyed the benefit of the circuit court's ruling that the marital home and three vehicles that were originally titled in both parties' names remained joint property—thus, Puckett received half the value of this property in the court's award. The value of the property was enhanced by Senger's efforts; the record indicates that the property had to be cleaned up and realtors consulted before it could attract a desired value.

Pursuant to the terms of their agreement, "[t]he parties agree to share equally household expenses associated with any residence titled jointly in the parties' names." The circuit court addressed this matter and correctly stated that the retitling did not transform the previously joint property into separate property. Marital property that was divided and transferred *remains marital property* so long as the record does not show that either spouse "intended to relinquish his or her interest in" such property. *Kelln v. Kelln*, 30 Va. App. 113, 126 (1999). It follows that

- 10 -

Puckett remains responsible for reimbursing Senger for his fair share of costs associated with preparing the marital home for sale—he clearly reaped the benefit of the sale.

Puckett further argues that Senger's claims for reimbursement should be rejected because Senger was unable to specify precisely what actions she took. We review the legal effect of a written power of attorney document de novo. *Jones v. Brandt*, 274 Va. 131, 135 (2007). In interpreting a power of attorney document, we employ both statutory principles from the Uniform Power of Attorney Act (Act), Code §§ 64.2-1600 to -1642, and common law principles. Code § 64.2-1619 (recognizing that "the principles of law and equity" supplement the Act). A power of attorney is construed strictly. *Davis v. Davis*, 298 Va. 157, 170 (2019).

Section 7.5 of the power of attorney provided for Senger to receive reasonable compensation for services rendered on behalf of Puckett. Section 7.5 of the power of attorney states "[m]y Agent shall be entitled to reasonable compensation for services rendered in the discharge of my Agent's duties and to reimbursement for all reasonable costs and expenses actually incurred and paid by my Agent on my behalf under any provision of this instrument." The circuit court admitted into evidence copies of Senger's paid time off logs from her employer. Senger also testified at trial that she had to take numerous hours off on multiple occasions to contract with realtors and prepare the home for sale. The circuit court had the necessary information to calculate the amount needed to reimburse Senger adequately; we find that the circuit court's ruling is supported by the record. Accordingly, the court did not err in requiring that Puckett reimburse Senger for services rendered to maintain and sell their joint property.

IV.  The Circuit Court Did Not Err in Determining its Award of Child Support

A.  Deviation From the Guideline Calculation

As we stated in *Ridenour v. Ridenour*, 72 Va. App. 446, 452 (2020):

> "The determination of child support is a matter of
> discretion for the circuit court, and therefore we will not disturb its
> judgment on appeal unless plainly wrong or unsupported by the
> evidence." *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015).  That
> discretion, however, is not unbounded.

The agreement provides that child support must be calculated "based on the circumstances then existing" at the time it is sought.  The agreement is silent regarding the imputation of income to either party due to incarceration or voluntary unemployment or underemployment.  Puckett suggests that the contract's silence with respect to imputation of income prohibits such calculations.  To the contrary, the agreement does not purport to prohibit a deviation from the presumptive child support amount provided by the guidelines set forth in Code § 20-108.2 as a general matter nor does it discuss the particular issue of imputing income due to incarceration or voluntary unemployment.  The agreement simply refers to "the circumstances then existing," and that language is broad enough to permit the circuit court to consider Puckett's incarceration and to impute income to him on that basis.  *See Layman v. Layman*, 25 Va. App. 365, 368 (1997) (holding that "a parent's incarceration may be found to constitute voluntary unemployment").[3]

At the time the award was considered, Puckett was a convicted felon serving a multiple year sentence for sexually molesting his stepdaughter.  His actions resulted in a loss in income

---

[3] Notably, a statutory modification occurred with respect to Code § 20-108.1 applicable to "petitions for child support and petitions for modifications of child support orders commenced on or after July 1, 2022," that now precludes imputation of income on the basis of incarceration in many circumstances.  2022 Va. Acts ch. 527.  The new provisions do not apply to this case.

and support for the minor child. The circuit court found that Puckett's actions were responsible

for this loss of income:

> The Court finds that [Puckett] is unemployed and incarcerated due
> to his own choices and actions and is responsible for the loss in
> income and family support that the parties' minor child previously
> enjoyed.

The court also found Senger bore heightened responsibility for meeting expenses in raising their

daughter without Puckett's income.

Puckett argues that it was error to depart from the support guidelines—and he observes

there is a rebuttable presumption that the amount of support calculated pursuant to the guidelines

set out in Code § 20-108.2 is the correct amount of child support awarded. *See* Code

§ 20-108.1(B). This presumption is rebutted when the trial court makes

> written findings in the order . . . that the application of such
> guidelines would be unjust or inappropriate in a particular case.
> The finding that rebuts the guidelines shall state the amount of
> support that would have been required under the guidelines, shall
> give a justification of why the order varies from the guidelines, and
> shall be determined by relevant evidence.

Code § 20-108.1(B). These written findings "must explain why the amount according to the

guidelines would be inappropriate or unjust and must justify the amount of support awarded."

*Herring v. Herring*, 33 Va. App. 281, 288 (2000).

The circuit court provided an extensive list of written findings in its letter opinion that

explained why the amount calculated pursuant to the guidelines would be inappropriate.[4] The

circuit court's findings are supported by the record. We find that the circuit court complied with

the terms of the agreement and provided sufficient written findings of fact pursuant to Code

---

[4] The parties both assert the guidelines called for $68 per month. The court's opinion
states $65 was the appropriate amount. Any discrepancy in this context is harmless error.

- 13 -

§ 20-108.1 to support its deviation from the presumptive child support guidelines.  Accordingly, the circuit court's rulings on child support calculations must be affirmed.

### B. The Circuit Court Did Not Err in Including the Full Amount of the Cost for the Child's Counseling in the Child Support Determination

Another factor considered by the circuit court with respect to child support is the cost of the child's counseling after Puckett's molestation of her half-sister.  The circuit court determined that the co-pay amount of the child's counseling treatment was $108.25 per month.  The court reasoned that a deviation from the child support guidelines to include the co-pay for counseling was appropriate "given the Defendant's actions in this matter."  It is a fair inference that the actions the circuit court was referring to included Puckett's conviction for multiple felonies for sexually molesting the child's half-sister.  The inference that this misconduct had a detrimental effect on the minor child's mental health is reasonable.

It was not error for the court to conclude that any unreimbursed medical expenses related to counseling for the minor child should appropriately be addressed by Puckett.  *See Ridenour*, 72 Va. App. at 455-56.  The circuit court's findings are entitled to great weight and will not be disturbed unless they are plainly wrong or without evidence to support them.  *Id.* at 452.

### V. The Circuit Court Did Not Err in Declining to Award Puckett's Attorney Fees

At trial, Puckett requested an award of his attorney fees based upon an alleged breach in performance of the agreement by Senger.  The alleged breach included Senger's request for recoveries—such as spousal support—that were not available under the terms of the agreement. In its letter opinion, the circuit court specifically rejected claims that there had been a breach of the agreement.  The circuit court made a finding of fact that Senger's actions were not "efforts to circumvent the Agreement" but merely "to hold the assets pending a resolution" in the divorce case.  The gist of the court's ruling was that "unanticipated circumstances" had arisen and Senger

was trying to deal with a family emergency as best she could under difficult circumstances. The court also noted that the agreement had turned out to be a harsh one for Senger who was denied spousal support under its terms. While the court ruled that the agreement was not "unconscionable," its analysis revealed that the unconscionability claim was not meritless. It was, accordingly, not frivolous or unfounded for Senger to simply preserve a spousal support argument in case the agreement proved to be unenforceable.

While Senger did initially request awards of spousal support and maintenance of life insurance in her first amended complaint, she did not persist in these claims at trial or throughout the litigation. Senger did not request nor present evidence at trial regarding a request for spousal support. The court, again, commented that it reviewed the parties' demeanor first-hand in reaching its findings. Under these circumstances we cannot say the circuit court erred in specifically ruling that Senger did not act to circumvent the agreement. Thus, we affirm the court's ruling that Puckett was not entitled to attorney fees.

## VI. Appellate Attorney Fees are Denied

Senger asks this Court to award her attorney fees incurred on appeal. This Court may award all or part of the fees requested. Rule 5A:30(b)(1)-(2). "The appellate court has the opportunity to view the record in its entirety and determine whether [an] appeal is frivolous or whether other reasons exist for requiring additional payment." *O'Loughlin v. O'Loughlin*, 23 Va. App. 690, 695 (1996). "In determining whether to make such an award, this Court will not be limited to a consideration of whether a party's position on an issue was frivolous or lacked substantial merit but may consider all the equities of the case." Rule 5A:30(b)(3). Puckett's appeal was not frivolous; indeed, he has prevailed as to several items of property. While Puckett did not succeed in overturning numerous rulings by the circuit court, the questions raised were legitimate and the

- 15 -

arguments were well-presented by both sides. The Court declines to award appellate attorney fees to Senger. Each party will bear its own fees.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed in all respects except its determination that items 9 and 10 on the disputed property list were joint property. The record establishes these guns were Puckett's separate property via inheritance. Accordingly, the case is remanded to the circuit court for the limited purpose of adjusting the property award to reflect Puckett's separate ownership of these two items.

*Affirmed in part, reversed in part and remanded.*