## Jennings E. Ballard, et al.

v.

## Wendell L. McCoy, et al.

Record No. 930746

April 15, 1994

Present: All the Justices

*John S. Edwards,* for appellants.
*Jay A. Price,* for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal involving a claim against an estate for trustee fees, the dispositive issue is whether the decedent had established the *inter vivos* trust on which the claim for fees is based.

Herbert H. Ballard (Ballard) died testate on March 6, 1990, three days after the death of his wife, Clotilde Ballard. On October 3, 1990, Brian T. Scheid, Assistant Commissioner of Accounts for Giles County, held a hearing to receive proof of debts and demands against Ballard's estate. A claim for trustee fees was submitted by Patricia Ballard McCoy and Wendell L. McCoy (the McCoys), who are Ballard's niece and her spouse. The McCoys presented a "billing for services" rendered pursuant to a "Trust Letter Agreement" dated February 9, 1988.

The trust agreement is in the form of a letter from Ballard to the McCoys. It states, in relevant part, "To establish a trust I transfer to you all my right, title and interest in the property described on Schedule A attached, and in any other property to be transferred in the future to you as Trustee."

The trust agreement further provides that the McCoys, as trustees, would pay income and principal to Ballard, as beneficiary, during his lifetime, with any remaining property to be transferred at his death to his personal representative. Paragraph 14 of the trust agreement provides, "This trust is established when you and I have signed this agreement and I have delivered property to Trustee." The trust agreement was signed by Ballard on February 8, 1988, and the McCoys signed the agreement as "[a]ccepted" on February 9, 1988.*

---

* Although Clotilde Ballard had signed an identical trust agreement, which was also accepted by the McCoys, the McCoys submitted their claim against only Herbert Ballard's estate. Clotilde Ballard died intestate, with most of her assets passing to Herbert Ballard.

The trust agreement directs the trustees to manage and invest the trust property, to "[r]eceive and deposit to my trust account" all income that may become due to Ballard, and to pay his enforceable debts and accounts. In addition, the agreement provides, "If I require specialized care and attention, you shall arrange and provide for domiciliary, custodial, medical, nursing or other care for me in my home if practical, otherwise in some other suitable facility." The trustees further agreed to "[p]erform such other services that are agreeable to you as may be requested by me."

Appended to the trust agreement is a list of stocks, bonds, and other intangible property owned by Ballard and/or his wife, which was intended to form the initial corpus of the trust. In their claim for trustee fees, the McCoys valued these assets at $532,628.93 as of February 9, 1988. They also listed income totalling $97,731.17 received by Ballard and his wife from all sources, including Social Security benefits and Virginia Supplemental Retirement System benefits, from February 9, 1988, through December 31, 1989. The McCoys claimed fees of $31,518.01, representing 5% of the principal amount of the listed assets and 5% of the income, pursuant to Paragraph 10 of the trust agreement, which states, "Your compensation for the services which you render in accordance with this Trust Agreement shall be at the rate of five percent of the principal and five percent of the income received by you as Trustees."

In his letter decision, the Assistant Commissioner of Accounts ruled, among other things, that the McCoys were entitled to the full amount of the trustee fees claimed. Jennings E. Ballard, Sue Ann Ballard Belcher, Naomi Yost Buchanan, James R. Collins, Michael V. Collins, Anna Lou B. Snidow, and Doyle Allen Yost (the heirs), who were all beneficiaries under Ballard's will, filed exceptions to this ruling.

At the hearing on the exceptions before the trial court, James A. Hartley, the attorney who had drafted the trust agreements, testified that the Ballards intended the agreements to provide a "stand-by" trust. According to Hartley, "the Ballards basically were looking for someone to take care of their property when and if they became incapable of doing so themselves or when and if it became tedious or burdensome for them to do so."

Hartley also testified that he served as co-executor of Ballard's estate and "did not find any property that was titled in the name of a trust." Further, none of the property appearing on the list attached to the trust agreement had been titled in the names of the McCoys as trustees. Although the trust agreement directed the trustees to receive

and deposit "to my trust account" all checks and monies, the evidence showed that no bank accounts had been established in the names of the McCoys as trustees.

The evidence established, however, that in January 1990, the McCoys became co-signatories on two checking accounts, one previously held individually by Ballard and the other by his wife. Patricia McCoy testified that the McCoys's signatures were added to the accounts as a matter of convenience to assist the McCoys in writing checks. The maximum amount kept in the checking accounts after January 1990 was $10,000.

Patricia McCoy also testified that she and her husband assisted the Ballards as they grew older, including performing "odd jobs" on their farm and taking Mrs. Ballard to see her doctor. However, there was little evidence that the McCoys handled any financial matters for the Ballards during their lives. The evidence showed only that, in the two months before the Ballards died, the McCoys had assisted the Ballards with writing checks, and that Wendell McCoy had begun preparing their tax return.

After hearing evidence and argument on the exceptions, the trial court implicitly ruled that an *inter vivos* trust had been established. The trial court held that the trustee fees awarded by the Assistant Commissioner were proper "due to the close relationship of the parties and the manner in which the McCoys treated their fiduciary relationship they had undertaken in good faith [in] the execution of the trust." This appeal followed.

The heirs argue that the trial court erred in awarding trustee fees to the McCoys because, under the terms of the agreement, no trust was established. In support of their argument, the heirs cite Paragraph 14 of the trust agreement, which provides:

Effective date. This trust is established when you and I have signed this agreement and I have delivered property to Trustee.

It is uncontroverted that the trust agreement was signed as required by Paragraph 14. However, the heirs argue that the contemplated trust was not established, because no property was delivered to the McCoys as trustees, and the bank accounts for which the McCoys assumed responsibility in January 1990 were not designated as trust accounts. The heirs contend that, since the trust was not established, the McCoys were not entitled to any compensation under the trust agreement.

In response, the McCoys contend that they are entitled to trustee fees in the amount set forth in the trust agreement. They argue that the

trust agreement was fully executed, and that it was not necessary for the property listed on the schedule to be transferred to them as trustees. The McCoys also assert that their claim for fees is further supported by the trial court's reliance on the relationship of the parties, including evidence of the services they performed for the Ballards. We disagree with the McCoys.

In order to create a trust *inter vivos* in which the trustee is other than the settlor, the settlor ordinarily must make an *inter vivos* transfer of the trust property to the trustee. *See Restatement (Second) of Trusts* § 17 (1959); 1 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 17 (4th ed. 1987). No trust can arise while the settlor retains both the full equitable interest and legal title in the trust property, since an essential characteristic of a trust is that the settlor effects the separation of these interests in the trust property. *See* 1A Scott & Fratcher, *supra,* at § 74. Unless the settlor of an *inter vivos* trust declares himself trustee, the separation of legal and equitable interests must come about through a transfer of the trust property to the trustee. *See id.*

We must construe the present trust agreement according to its intent, and the agreement must stand or fall on its own terms. *See Bickers v. Shenandoah Valley Nat'l Bank,* 197 Va. 145, 153, 88 S.E.2d 889, 894 (1955). The trust agreement purported to establish a revocable *inter vivos* trust, pursuant to which Ballard would retain the sole equitable interest during his lifetime in the property listed in the addendum, the legal title to which would be held by the McCoys as trustees.

The language of the instrument provides for the terms of the trust's creation, administration, and termination. Paragraph 14 of the trust agreement specifies the conditions that would bring the trust into being, and it clearly evidences Ballard's intent that the trust agreement would become effective only when he had "delivered property" to his trustees.

The record does not show that any of the property listed in the addendum to the trust agreement was delivered, either actually or constructively, to the McCoys. Nor is there evidence that any item of the listed property was retitled in the names of the McCoys as trustees. Although the McCoys obtained signature authority over certain of the Ballards's bank accounts in 1990, the accounts were not designated as trust accounts, and the evidence showed that the Ballards intended only to have the McCoys assist them in paying bills and in meeting their other expenses. Therefore, because Ballard, as settlor, chose to impose certain conditions precedent to the creation of the trust, and

never undertook the last act required to fulfill those conditions, we hold that the trust contemplated by the trust agreement was never established. *Cf. Bickers,* 197 Va. at 156, 88 S.E.2d at 897.

The right of a trustee to receive compensation is based solely on the services actually rendered in behalf of the trust. *See Dearing v. Walker,* 179 Va. 620, 623, 20 S.E.2d 483, 484 (1942). Manifestly, in the absence of a trust, there can be no such services rendered. Therefore, we conclude that the trial court erred in awarding trustee fees to the McCoys.

For these reasons, we will reverse the judgment of the trial court and enter final judgment for the heirs.

*Reversed and final judgment.*