PRESENT: All the Justices

WILLIAM J. REINECK, CURATOR OF THE
ESTATE OF FRANK B. STILL, JR.

OPINION BY
v. Record No. 151917                              JUSTICE STEPHEN R. McCULLOUGH
                                                             November 23, 2016

LAVERNE S. LEMEN, ET AL.


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

In this appeal we consider whether the trial court erred in upholding the actions of two

children, LaVerne S. Lemen and Jeffrey B. Still, who relied on a broad power of attorney to

create *inter vivos* trusts that disinherited other prospective heirs and caused the entire estate to

pass to Lemen and Still. We also consider whether the trial court erred in awarding attorney's

fees against the personal representative of an estate[1] in his personal capacity under Code § 64.2-

795. We affirm the trial court's reading of the power of attorney, but we reverse the award of

attorney's fees.

---

[1] The papers in this litigation style the appellant as curator of the estate. Under Code §§
1-234 and 64.2-100 the General Assembly has adopted the general term "[p]ersonal
representative" to encompass executors, administrators of an estate, and every other person who
serves as a curator of a decedent's estate. Code § 64.2-451 provides that court or the clerk of
court "may appoint a curator of the estate of a decedent during a contest about the decedent's
will, during the infancy or in the absence of an executor, or until administration of the estate be
granted and may require the curator to give a bond in a reasonable penalty." The latter provision
directs that the curator "shall ensure that the estate is not wasted before the qualification of an
executor or administrator, or before such estate lawfully comes into possession of such executor
or administrator." It further provides that the curator "may demand, sue for, recover, and receive
the decedent's personal estate and all debts due to the testator."

BACKGROUND

I.      THE ESTATE PLANS

In 1991, husband and wife, Frank B. Still, Jr. and Jane F. Still, prepared similar estate plans.[2]  Frank executed a will and a revocable trust.  Jane also prepared a trust that mirrored Frank's trust in its dispositional provisions.  Under the terms of these trusts, Frank's children, LaVerne S. Lemen and Jeffrey B. Still, were to receive 40% of the assets of both trusts.  Jane did not have any children.  The terms of both trusts, however, called for her relatives to receive a 60% share of both Frank's and Jane's trusts.

In 1999, Frank and Jane both amended their trusts.  Frank's one-page amendment provided that Jane's relatives would receive 55% of the trust assets, down from the 60% the trust had provided in 1991.  Frank's children would receive 45% rather than 40%, as provided in 1991.  Jane similarly amended her trust, i.e. her relatives would receive 55% instead of 60% and Frank's children would receive 45% rather than 40%.

Frank also executed a durable power of attorney in 1999.  He designated Jane as his attorney-in-fact should he become incapacitated, and Lemen as his successor attorney-in-fact should Jane be unwilling or unable to serve.  Frank's power of attorney vested his agent with broad powers under Article II, including:

> the power to do and perform in a fiduciary capacity as my Attorney-in-Fact may deem advisable anything of any character which I might do or perform for myself . . . but excluding those matters which my Attorney-in-Fact is not permitted to do as expressly provided in this Power of Attorney or as provided by law.

The attorney-in-fact also had the power under section K of Article III to:

> assign, transfer and convey all or any part of my real or personal property, or my interest in such property, to, and withdraw such property from, (i) any revocable

---

[2] For the sake of clarity, we will call Frank B. Still, Jr., "Frank", his wife Jane F. Still "Jane", and his son Jeffrey B. Still "Still."

trust established by me during my lifetime, or (ii) any revocable trust established by my Attorney-in-Fact during my lifetime which directs the trustee or trustees to administer the trust for my benefit.

The document further granted the attorney-in-fact the power to "manage" his Individual Retirement Accounts (IRAs),

including but not limited to (i) the exercise of all rights, privileges, elections, and options that I have with regard to any [IRA] . . . ; (ii) making withdrawals therefrom; (iii) determining forms of payments on my behalf, or my beneficiaries; (iv) making, changing or altering investment decisions; [and] (v) changing custodians or trustees.

(POA Art. III, § M).

Additionally, Frank's power of attorney vested his agent with the authority to create any instruments under seal, including *inter vivos* trusts, whether revocable or irrevocable, "for my benefit during my lifetime and/or the benefit of my wife and my descendants after my death." (POA Art. V, § F). The power of attorney restricted the agent's power to "cause assets to pass to my Attorney-in-Fact . . . whether by inter vivos transfer, designation of beneficiary of any contract or in any other manner." Such actions are only permissible when "specifically authorized by this [POA]." (POA Art. VI).

Frank began to show signs of dementia in 2000. He was diagnosed a few years later with Lewy Body Dementia. In April 2006, Jane amended her trust, significantly reducing Lemen and Still's share from 45% of her estate to a lump sum award of $20,000 for each. Frank was moved to a memory care unit in 2008. In May 2008, Jane again amended her trust, this time completely disinheriting Lemen and Still. Jane died in 2011. Her entire trust was distributed to her heirs. Lemen and Still received nothing from Jane's estate.

Upon Jane's death, Lemen became Frank's attorney-in-fact and she and Still became co-trustees of Frank's trust and the executors of his will. In January 2012, Lemen invoked her

3

power as Frank's attorney-in-fact to amend Frank's trust. She added a provision to Frank's trust calling for the trustee to "distribute to [Frank's] descendants, per stirpes, the amount necessary to result in Frank's descendants receiving forty-five percent (45%) of the aggregate disposed of pursuant to Jane's Amendments [to her trust] and Frank's Trust."

On February 27, 2012, Lemen created two new trusts, the living trusts, naming herself as sole trustee of one and herself and Still as co-trustees of the other. The living trusts disinherited Jane's heirs and provided for Lemen and Still to receive Frank's entire estate at his death. When Frank died the following day, on February 28, 2012, Lemen withdrew the assets from the living trusts, totaling approximately $1.24 million and divided the funds between Still and herself.

II.    LITIGATION ENSUES

Jane's heirs, including William J. Reineck, filed suit against Lemen and Still alleging that they breached their fiduciary duties. The court dismissed the case with prejudice on the basis that the plaintiffs, as contingent beneficiaries, lacked standing to bring the suit.

Reineck next successfully petitioned for an appointment as curator of Frank's estate. Reineck promptly filed a second suit, this time in his capacity as curator pursuant to Code § 64.2-451. He alleged that Lemen and Still breached their fiduciary duties and he asked for the imposition of a constructive trust. The trial court granted Lemen and Still's motion for summary judgment, finding that "Mrs. Lemen acted within the express scope of her authority as agent under Frank['s] Durable Power of Attorney and within the authority granted by the Virginia Uniform Power of Attorney Act, and accordingly did not breach any fiduciary duty thereunder." In addition, the trial court awarded attorney's fees against Reineck personally.

4

ANALYSIS

I.      Lemen's actions were authorized by the power of attorney.

A.      The power of attorney expressly authorized the creation of *inter vivos* trusts and gifts to Frank's children.

Reineck claims that Lemen's creation of the *inter vivos* trust, in which she shifted all of Frank's assets to herself and her brother at Frank's death, is inconsistent with the authority granted to her under the power of attorney. Where a document is unambiguous and "the sole issue on appeal is the legal effect of a written document, we review the issue de novo." *Jones v. Brandt*, 274 Va. 131, 135, 645 S.E.2d 312, 314 (2007).

Although powers of attorney are construed strictly, *id.* at 137, 645 S.E.2d at 315, Frank's power of attorney unquestionably vested his attorney-in-fact with broad powers. Article II provides that the attorney-in-fact has:

> the power to do and perform in a fiduciary capacity as my Attorney-in-Fact may deem advisable anything of any character which I might do or perform for myself . . . but excluding those matters which my Attorney-in-Fact is not permitted to do as expressly provided in this Power of Attorney or as provided by law.

Section K of Article III expressly authorized the attorney-in-fact to:

> assign, transfer and convey all or any part of my real or personal property, or my interest in such property, to, and withdraw such property from, (i) any revocable trust established by me during my lifetime, or (ii) any revocable trust established by my Attorney-in-Fact during my lifetime which directs the trustee or trustees to administer the trust for my benefit.

Section F of Article V permitted Frank's attorney-in-fact to "make, execute, endorse, acknowledge, and deliver any and all instruments . . . including, but not limited to, . . . inter vivos trusts . . . for my benefit during my lifetime and/or the benefit of my wife and my descendants after my death."

5

Reineck argues that section F of Article V permits only a trust that would benefit *both* Jane and Frank's descendants because it provides that an *inter vivos* trust must be created for Jane "and" his descendants. Because the trust benefitted only Frank's descendants, in Reineck's view, it is invalid. We disagree. The most natural reading of this clause, and particularly the "and/or" provision, is that the attorney-in-fact could make instruments, including *inter vivos* trusts, for Frank's benefit when he was alive, and upon his death, for the benefit of either his wife Jane or his descendants or both. Frank's wife Jane had pre-deceased him. This clause says nothing about Jane's possible heirs. The creation of *inter vivos* trusts by Lemen for the benefit of Lemen and Still is entirely in accord with the plain language of this clause.

Reineck's reading also cannot be squared with other clauses in the power of attorney. For example, section A of Article IV allows the attorney-in-fact to perform acts for the support and maintenance of "my wife, my dependents and me." Clearly, had the attorney-in-fact performed an act for the benefit of Frank exclusively, the act would not be rendered invalid because it had not also included acts for the support and maintenance of Jane and Frank's dependents.

Reineck also relies on section G of Article VIII and Code § 64.2-1612(A)(1). That provision states in relevant part that:

> This Power of Attorney does not impose a duty on my Attorney-in-Fact to exercise granted powers, but when a power is exercised, my Attorney in-Fact shall use due care to act in my best interests and in accordance with this document.

Code § 64.2-1612(A)(1) specifies that

> Notwithstanding provisions in the power of attorney, an agent that has accepted appointment shall . . .
>
> 1. Act in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest.

The trial court also correctly determined that Lemen acted in Frank's best interests. It is evident that Frank was concerned with meeting his own needs, taking care of his wife's needs, and providing for his children. The creation of the *inter vivos* trusts certainly did not harm Frank during his life. Jane had pre-deceased Frank, so the *inter vivos* trusts did not trench on Frank's regard for his wife's welfare. Finally, the *inter vivos* trusts did not benefit complete strangers, they benefitted his children.

Frank had sufficient regard for his children to provide for them in his original estate plan, and to name his daughter as his attorney-in-fact should his wife, Jane, be unable to serve. While Frank's original estate plan called for initially 60% and then 55% of his estate to go to Jane's relatives, his later-executed power of attorney made no mention of Jane's relatives or of his earlier estate documents. However, the original estate plan was made with parallel provisions that contemplated an inheritance from Frank's estate to Jane's relatives and Frank's children, and vice versa from Jane's estate to her relatives and Frank's children. Thus, we are satisfied that Lemen's actions were consistent with the express language of Frank's power of attorney and with the provisions of the Uniform Power of Attorney Act, including Code § 64.2-1612(A)(1).

Finally, we note that although the power of attorney was clear enough that Lemen had the authority to do what she did, the power of attorney also contained the following clause in section G of Article VIII:

> My Attorney in-Fact [is] . . . hereby released and forever discharged by me, my estate, my heirs, successors and assigns and personal representatives from all liability and from all claims or demands of all kinds arising out of the acts or omissions of my Attorney in-Fact pursuant to this document, except for willful misconduct or gross negligence.

Reineck, purporting to act on behalf of Frank's estate, cannot come close to showing any willful misconduct or gross negligence on Lemen's part.

7

B.      The power of attorney encompassed the power to designate a new beneficiary for an IRA.

Article III of Frank's power of attorney governed "Specific Powers Relating to Property." Section M of Article III governs "Qualified Retirement Plans and Individual Retirement Accounts." It provides that the attorney-in fact may exercise the following powers:

> The power to manage qualified retirement plans and individual retirement accounts, including but not limited to (i) the exercise of all rights, privileges, elections, and options that I have with regard to any individual retirement account, pension, profit sharing, stock bonus, [K]eogh, or other retirement plan or similar arrangement; (ii) making withdrawals therefrom; (iii) determining forms of payments on my behalf, or my beneficiaries; (iv) making, changing or altering investment decisions; (v) changing custodians or trustees; (vi) making or completing rollovers, direct "trustee to trustee" or similar type transfers of the assets, rights or other benefits of such retirement plans or individual retirement accounts.

> Under Code § 64.2-1622(A),

> an agent under a power of attorney may do the following on behalf of the principal or with the principal's property only if the power of attorney expressly grants the agent the authority and exercise of the authority is not otherwise prohibited or limited by another statute, agreement, or instrument to which the authority or property is subject . . . . (4) Create or change a beneficiary designation.

Reineck points to Code § 64.2-1622(A) and argues that the power of attorney did not specifically authorize Lemen to make a change of beneficiary. Again, we disagree. In the section specifically captioned "Qualified Retirement Plans and Individual Retirement Accounts," set forth above, Frank provided the attorney-in-fact with the power to "manage qualified retirement plans and individual retirement accounts, *including but not limited to* (i) *the exercise of all rights, privileges, elections, and options that I have with regard to any individual retirement account*." (emphasis added). Obviously, Frank had the right to designate beneficiaries. This reading of the specific provisions of section M of Article III is also consistent with the broad provision in Article II, which stated that Frank was granting his attorney-in-fact

8

the power to do and perform in a fiduciary capacity as my Attorney-in-Fact may deem advisable anything of any character which I might do or perform for myself if personally present and acting.

Although the power of attorney here does not track the language of Code § 64.2-1622(A) and does not specifically state whether the attorney-in-fact can change a beneficiary, we are nevertheless persuaded that the language in the power of attorney here did grant Lemen the power to make such a change.

II.     THE COURT ERRED IN AWARDING ATTORNEY'S FEES.

At the conclusion of the second suit, the trial court awarded Lemen and Still approximately $650,000 in attorney's fees, for fees generated in the first suit, which was dismissed for lack of standing, as well as for fees generated in the second suit. Reineck challenges the fee award on several grounds. First, he argues that the court could not award fees at the conclusion of a second lawsuit for fees generated in a first, concluded lawsuit. Second, he contends that Code § 64.2-795 does not authorize an award of fees against him personally when he brought the case in a representative capacity, i.e., as curator for the estate. Lemen responds that Code § 64.2-795 does authorize such an award, and she notes that she has consumed the near totality of her inheritance in legal fees to fend off meritless litigation brought by Reineck.

We first take up the question of whether Code § 64.2-795 authorized the trial court to award fees in connection with the second lawsuit against Reineck personally when he brought the suit in a representative capacity. "It is well established that Virginia follows the 'American Rule,' which provides that '[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.'" *Chacey v. Garvey,* 291 Va. 1, 8, 781 S.E.2d 357, 360 (2015) (quoting *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 213, 776 S.E.2d 808, 813 (2015)). "The authority for awarding costs

and attorney's fees is in derogation of common law, and therefore, subject to strict interpretation." *Id.* at 10, 781 S.E.2d at 361 (citing *Lansdowne Dev. Co., L.L.C. v. Xerox Realty Corp.*, 257 Va. 392, 403, 514 S.E.2d 157, 162 (1999)). We conclude that Code § 64.2-795 does not provide for an award of attorney's fees assessed against a litigant personally when that litigant is acting in a representative capacity. That statute provides:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Lemen stresses the "justice and equity" language of this statute. Reineck responds that the statute authorizes an award of fees to "any party." He notes that he brought the second suit in a representative capacity, not as a party.

The interpretation of a statute "presents a pure question of law and is accordingly subject to de novo review by this Court." *Washington v. Commonwealth*, 272 Va. 449, 455, 634 S.E.2d 310, 313 (2006). The "party," here, for purposes of Code § 64.2-795, was Reineck acting in his capacity as curator of Frank's estate. His status as a curator is legally significant.

"Acts performed by the same person in two different capacities 'are generally treated as the transactions of two different personages.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n. 6 (1986) (discussing standing) (quoting F. James & G. Hazard, Civil Procedure § 11.6, p.594 (3d ed. 1985)).

> A person who sues or is sued in his official or representative capacity is, in contemplation of law, regarded as a person distinct from the same person in his individual capacity and is a stranger to his rights or liabilities as an individual. It is equally true that a person in his individual capacity is a stranger to his rights and liabilities as a fiduciary or in a representative capacity.

10

*Alexander v. Todman*, 361 F.2d 744, 746 (3d Cir. 1966). *See also Airlines Reporting Corp. v. S & N Travel*, 58 F.3d 857, 862 (2d Cir. 1995) ("Where a party sues or is sued in a representative capacity, . . . its legal status is regarded as distinct from its position when it operates in an individual capacity.").

We have declined to blur the lines between a suit brought by a personal representative and a suit initiated by a beneficiary of the estate. We have noted that "[t]he personal representative, not a beneficiary of the estate, is the proper party to litigate on behalf of the estate" and that is true even when the personal representative is also a possible beneficiary of the estate. *Burns v. Equitable Assocs.,* 220 Va. 1020, 1028, 265 S.E.2d 737, 741 (1980).

Lemen cites *Clare v. Grasty*, 213 Va. 165, 191 S.E.2d 184 (1972), *Shocket v. Silberman*, 209 Va. 490, 165 S.E.2d 414 (1969), and *McCormick v. Elsea*, 107 Va. 472, 59 S.E. 411 (1907), for the proposition that a personal representative may be made to pay unjustified attorney's fees. Those cases, however, involved situations where a court foreclosed a personal representative from charging *the estate* for unwarranted fees. *Clare*, 213 Va. at 170, 191 S.E.2d at 188 ("[E]xpenses of counsel for services rendered not in aid of the executor in the performance of his duties are not chargeable against the estate."); *Shocket*, 209 Va. at 497, 165 S.E.2d at 417 (holding that an executor cannot litigate the claims of one set of legatees against the others at the expense of the estate); *McCormick*, 107 Va. at 474-75, 59 S.E. at 412-13 (denying claim for fees from the estate for suit brought by a personal representative and a beneficiary against the remaining beneficiaries). None of the cases involved a situation, like the one before us in this case, where the party defending the estate litigation seeks to make the *opposing party*, acting in a

11

representative capacity, *personally* pay for the defendant's fees. Lemen has not offered a single case for that distinct proposition.[3]

Code § 64.2-795 permits attorney's fees against a "party." The party to the suit was Reineck as curator, not Reineck personally. Accordingly, this case presents no recognized basis in Virginia law for departing from the American Rule, and we hold that the trial court erred in awarding attorney's fees against Reineck personally.[4]

The remaining question is whether the trial court could award attorney's fees against Reineck in the second lawsuit based on fees generated in the first suit, which Reineck, along with others, did bring in his personal capacity. Lemen did not seek attorney's fees against Reineck at the conclusion of the first suit. Again, Reineck's intervening appointment as curator is significant. In the second lawsuit, Reineck was not before the court in his personal capacity. Instead, he appeared before the court in a representative capacity, as the representative of Frank's estate. To sustain an award of attorney's fees, the party against whom fees are being sought must be before the court. *See Beseau v. Bhalani*, 904 So. 2d 641, 642 (Fla. Dist. Ct. App. 2005) (per curiam) (reversing an award of attorney's fees and costs against the personal representative of the estate in her personal capacity because the appellant, who brought suit in her representative capacity, was never a party to the proceeding in her individual capacity). The

---

[3] Code § 64.2-549, which Reineck cites as a bar to recovery of attorney's fees, does not govern our analysis. That statute provides that "[t]he liability of a personal representative or his surety shall not exceed the assets of the decedent *by reason of any omission or mistake in pleading or false pleading by such representative.*" (emphasis added). No omission, mistake, or false pleading is involved here. Code § 64.2-549 is simply inapposite.

[4] We express no opinion concerning what other avenues may be available for sanctions and attorney's fees when a party in a representative capacity has filed a frivolous suit or one for vindictive or harassing purposes. That issue is not before us.

court therefore erred when it awarded Lemen attorney's fees against Reineck personally because Reineck was not before the court in his personal capacity in the second suit.[5]

CONCLUSION

We will reverse the award of attorney's fees and affirm the judgment below in all other respects, entering final judgment for the appellees.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

---

[5] We express no opinion concerning whether a litigant may seek an attorney's fee award in a second related suit against the same party when the litigant did not ask for fees in a first, concluded suit.