COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Athey, Causey and Callins
Argued at Winchester, Virginia


CONNIE A. KOSMANN, PUTATIVE TRUSTEE OF
 THE BROWN LIVING TRUST

                                                        OPINION BY
v.      Record No. 0367-23-4          JUDGE DOMINIQUE A. CALLINS
                                                        JULY 23, 2024
EDITH BROWN, BY HER AGENT
 NADINE SEAMANS


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Chong C. Park (Law Office of Chong C. Park, Esq., PLLC, on
briefs), for appellant.

Kevin J. Daniel (Gareth A. Bowen; Troxell & Leigh, P.C., on brief),
for appellee.


This matter involves the interpretation of a trust agreement provision. That provision, found in Article 4, Section 4 of the subject Trust Agreement, provides that an attorney-in-fact may exercise any right or power on the grantor's, Edith Brown, behalf, "other than (i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment if held by [Brown's] Attorney-in-Fact." The question Connie Kosmann raises on appeal is whether an Amendment made by Brown's daughter and attorney-in-fact, Kimberly Monroe, to the Trust constituted such a general power of appointment and thus violated the restriction of Article 4, Section 4 of the Trust Agreement. Because the answer to this question is "yes," we affirm the judgment of the circuit court.

BACKGROUND

In May 2015, Brown created the Brown Living Trust, a revocable, grantor trust, appointing herself and her daughter, Monroe, as initial trustees, and Brown's niece, Nadine Seamans, as successor trustee. The Trust Agreement, among other things, specified that Brown, while alive, "may at any time or times amend any provision of [her] Trust Agreement or revoke [her] Trust in whole or in part," and required that "[a]ny amendment or revocation of [her] Trust Agreement made during [Brown's] life shall be by a written instrument signed by [her] and delivered to [her] Trustee." In addition, Article 4, Section 4 of the Trust Agreement provided:

> Any right or power, other than (i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment if held by [Brown's] Attorney-in-Fact, may be exercised for and on [Brown's] behalf by any Attorney-in-Fact who, at the time of the exercise, is duly appointed and acting for [Brown] under a valid and enforceable Power of Attorney executed by [Brown]. Only if no such Attorney-in-Fact is then available may a legal representative appointed by a court of competent jurisdiction exercise such right or power.

> Other than as provided in this Section, [Brown's] powers under [this] Trust Agreement are personal to [Brown] and may not be exercised by any other person or entity.

Upon Brown's death, the remainder of her property was to be divided "into separate and equal shares," with "one share for . . . [Monroe,] then living," and "one share [for] . . . S[eamans] should [Monroe] predecease [Brown]." In addition, the Trust Agreement provided that "[i]f at any time there is no beneficiary entitled to receive all or any part of [Brown's] Trust Estate . . . then [her] remaining Trust Estate shall be distributed . . . to" the Fairfax County Society for the Prevention of Cruelty to Animals.

Brown also executed a Property Power of Attorney (POA) at about the same time that she created the Trust Agreement, which appointed as agents Monroe and Seamans. The document,

in relevant part, gave to Brown's agents "the power to amend, revoke and/or exercise any and all other powers [Brown] could exercise under the terms of any trust of which [she is] Trustor."

In March 2019, Monroe, acting as attorney-in-fact for Brown, amended the Trust. In so doing, Monroe made the following alterations to the Trust Agreement: Article 1, Section 3 was deleted and replaced with language making the Trust irrevocable; Article 3, Section 4 was deleted and replaced with text naming Monroe and Kosmann as trustees;[1] Article 4, Section 3 of the Trust, titled "Right to Amend or Revoke Trust," was deleted; and Article 6, Section 4 was deleted and replaced with text stating that, upon Brown's death, "[her] Trustee shall distribute $50,000 to Nadine Seamans, or her descendants, per stirpes, outright, free of trust," that if Seamans "dies prior to [Brown's] death without descendants, [Brown's] Trustee shall distribute the balance of the specific gift as provided in the Articles that follow" and also language specifying that, upon Brown's death, her "Trustee shall distribute $5,000 to 4Paws Rescue Team, Inc. outright, free of trust." Monroe also modified Article 7 of the Trust Agreement, which was deleted and replaced with the following language:

> Upon [Brown's] death, [her] Trustee shall distribute [her] remaining trust property to Kimberly P. Monroe outright, free of trust. If Kimberly P. Monroe is deceased, [Brown's] Trustee shall distribute [Brown's] remaining trust property to the then acting Trustee of the Monroe Living Trust dated November 7, 2017. If that trust is not in effect or if for any other reason the pour-over cannot be accomplished, [Brown's] Trustee shall distribute [Brown's] remaining trust property to the personal representative of the estate of Kimberly P. Monroe.

At the same time, Monroe, acting as Brown's attorney-in-fact, executed a document titled "Resignation as Trustee of Edith G. Brown," which "exercise[d] [Brown's] authority" to resign Brown as Trustee of the Trust, thereby leaving Monroe the sole Initial Trustee.

---

[1] This change removed Seamans as a successor trustee.

- 3 -

Almost a year later, in July 2020, Kosmann's counsel sent a letter to Sarah Darnell, the Business Office Manager for Discovery Village at the Forum in Fort Myers, Florida, where Brown was a resident in the memory care unit. In the letter, Kosmann's counsel stated that, "In the past, Ms. Brown's bills for Discovery Village have been paid by the Trust," and asked that Discovery Village "discontinue automatically drafting, or otherwise paying Ms. Brown's Discovery Village bills" from the previously established bank account. The letter directed Discovery Village to contact Seamans for payment.

Seamans, acting as Brown's attorney-in-fact,[2] petitioned for declaratory judgment in February 2021. Her complaint alleged that, in September 2017, Monroe "learned that she had terminal brain cancer" and that, "[b]y January 2019, . . . Monroe's cancer had progressed to the point where she began to consider hospice care." The complaint claimed that Monroe's "Amendment and the Resignation [we]re both legally invalid and *ultra vires*," and also noted that "unfortunately . . . Monroe succumbed to her illness, and passed away" in November 2019. The complaint alleged that the Trust was "under the control of a stranger and non-relative[,] . . . Kosmann[,] pursuant to the unauthorized and invalid Amendment" and that Kosmann "exercised dominion and control over the trust assets."

Brown requested that the circuit court enter judgment against Kosmann declaring that the Amendment and Resignation were "invalid and unenforceable"; that "Kosmann does not have any legal right to be Trustee of the" Trust; that Seamans is a Trustee of the Trust; that "Kosmann submit a full and complete accounting of the" Trust from March 2019 "to the present date"; and that "Kosmann . . . immediately transfer ownership and possession of all assets of the" Trust "to the successor trustee."

---

[2] Because Seamans participates in this matter qua Brown's agent, she is referred to as "Brown" *infra*.

- 4 -

In July 2021, Brown moved for summary judgment. Kosmann, in response, moved for partial summary judgment, arguing, in pertinent part, that Monroe's Amendment to the Trust did not constitute a "general power of appointment," based on definitions of that term, "power of appointment," and "[p]resently exercisable general power of appointment" in the Virginia Uniform Trust Code and the Uniform Power of Attorney Act.

Following a hearing on the cross-motions for summary judgment, the circuit court took the matter under advisement. In a March 2022 opinion letter, the circuit court "declare[d] the amendment to the . . . Trust . . . invalid and unenforceable due to Monroe's exercise of general power of appointment." The circuit court defined such power pursuant to statute, which specifies "[g]eneral power of appointment" to "mean[] a power of appointment exercisable in favor of a powerholder, the powerholder's estate, a creditor of the powerholder, or a creditor of the powerholder's estate." *See* Code § 64.2-701.

The circuit court noted that "although an agent under a power of attorney may amend a trust pursuant to Code § 64.2-751, subsection E therein provides that the trust itself may place limits on the agent's powers." In evaluating Brown's Trust, the circuit court found such a limitation in Article 4, Section 4 of the Trust Agreement, which provided that an attorney-in-fact may exercise any right or power "for and on [Brown's] behalf" "other than (i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment if held by [Brown's] Attorney-in-Fact." The circuit court observed that such limitations are "practical" by "prevent[ing] a trustee from circumventing trust limitations by simply executing an amendment under another designation (*e.g.*, as agent, not trustee)," and reasoned that "the exercise of a general power of appointment by Monroe was clearly prohibited and unauthorized under the trust."

The circuit court found that "[b]y executing the Amended Trust, Monroe *inter alia* directed the trust residue to herself or her estate upon Brown's passing, *i.e.*, the powerholder exercised the power of appointment in favor of herself." The circuit court also explained that "[t]he Amended Trust . . . purport[ed] to convert the Trust from being revocable to irrevocable, . . . effectively mean[ing] that Monroe's interest in the Trust contingently vested at that time." The circuit court thus determined that "[b]ecause the Amended Trust ostensibly could not be later amended so as to reverse the favor [Monroe] conferred on herself, Monroe's execution of the Amended Trust constituted a general power of appointment." Accordingly, the circuit court granted Seamans's motion for summary judgment in part.[3]

Following additional motions and hearings, the circuit court entered its final judgment in January 2023, decreeing that "Kosmann is not the Trustee of the . . . Trust" and that Seamans "is hereby Trustee of the . . . Trust." Kosmann appeals.

ANALYSIS

I. Standard of Review

Appellate courts "review a circuit court's grant of summary judgment de novo." *GEICO Advantage Ins. Co. v. Miles*, 301 Va. 448, 455 (2022).

> In reviewing a circuit court's grant or denial of summary judgment, we "apply[] the same standard a [circuit] court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason."

---

[3] In addition to arguing that Monroe's Amendment "constituted a general power of appointment," the complaint contended that the Amendment was "a gift that violated . . . Monroe's limited gifting authority under Section 15(c) of [Brown's] POA and Section 64.2-1638(B)(1) of the Virginia Uniform Power of Attorney Act." The circuit court rejected the latter argument, finding that "execution of the Amended Trust did not constitute a gift exceeding Monroe's gifting authority." The issue of whether the Amended Trust constituted a gift exceeding Monroe's gifting authority is not raised on this appeal.

*Va. Fuel Corp. v. Lambert Coal Co.*, 291 Va. 89, 98 (2016) (quoting *Fultz v. Delhaize America, Inc.*, 278 Va. 84, 88 (2009)). "A [circuit] court may appropriately grant summary judgment only in cases in which no material facts are genuinely in dispute." *Klaiber v. Freemason Assocs.*, 266 Va. 478, 484 (2003). "Thus, if the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate." *Fultz*, 278 Va. at 88. Here, there are no material facts in genuine dispute. Rather the question before us is one of law, which we review de novo. *See VACORP v. Young*, 298 Va. 490, 494 (2020).

## II. Monroe's Amendment

This matter, at its heart, traces to a dispute over whether the Amendment signed by Monroe as Brown's attorney-in-fact "constitute[d] a general power of appointment" within the meaning of Article 4, Section 4 of the Trust Agreement. Article 4, Section 4 of the Trust Agreement provides,

> Any right or power, other than (i) an amendment by Will, or (ii) *any right or power that would constitute a general power of appointment if held by* [*Brown's*] *Attorney-in-Fact*, may be exercised for and on [Brown's] behalf by any Attorney-in-Fact who, at the time of the exercise, is duly appointed and acting for [Brown] under a valid and enforceable Power of Attorney executed by [Brown]. Only if no such Attorney-in-Fact is then available may a legal representative appointed by a court of competent jurisdiction exercise such right or power.
>
> Other than as provided in this section, [Brown's] powers under [her] Trust Agreement are personal to [her] and may not be exercised by any other person or entity.

(Emphasis added). Kosmann contends that Monroe's Amendment did not constitute such a general power of appointment, and so did not violate the prohibition contained in Article 4, Section 4 of the Trust Agreement, proscribing an attorney-in-fact from exercising "[a]ny right or power that would constitute a general power of appointment."

- 7 -

Kosmann's argument, in considerable part, turns on a trio of statutory definitions. First is the Uniform Trust Code's definition of "general power of appointment." The Code defines "general power of appointment" to "mean[] a power of appointment exercisable in favor of a powerholder, the powerholder's estate, a creditor of the powerholder, or a creditor of the powerholder's estate." Code § 64.2-701. Second is the Code's definition of "power of appointment." Such a power

> enables a powerholder acting *in a nonfiduciary capacity* to designate a recipient of an ownership interest in or another power of appointment over the appointive property. *"Power of appointment" does not include a power of attorney.*

Code§ 64.2-701 (emphases added). Third, Kosmann points to the Uniform Power of Attorney Act, which defines "presently exercisable general power of appointment"

> with respect to property or a property interest subject to a power of appointment, mean[ing] power exercisable at the time in question to vest absolute ownership in the principal individually, the principal's estate, the principal's creditors, or the creditors of the principal's estate. The term includes a power of appointment not exercisable until the occurrence of a specified event, the satisfaction of an ascertainable standard, or the passage of a specified period only after the occurrence of the specified event, the satisfaction of the ascertainable standard, or the passage of the specified period. *The term does not include a power exercisable in a fiduciary capacity or only by will.*

Code § 64.2-1600 (emphasis added).

As the italicized text emphasizes, the latter two terms, "power of appointment" and "presently exercisable general power of appointment," are not defined as to "include" fiduciaries and an attorney-in-fact. On this basis, Kosmann claims that, as a matter of statutory definition, a fiduciary, including attorneys-in-fact, cannot be such powerholders. Hence, Kosmann argues that because Monroe was Brown's attorney-in-fact, the Amendment did not constitute a "general

- 8 -

power of appointment," since it is impossible, by statutory definition, for a "power of appointment" to be exercised by someone operating with a power of attorney.[4]

A. *Kosmann misconstrues the definitions of "power of appointment" and "presently exercisable general power of appointment" under Code §§ 64.2-701 and 64.2-1600.*

Kosmann's argument fails for two reasons. First, Kosmann's argument fails as a matter of pure statutory construction. Neither the definition of "power of appointment" in Code § 64.2-701, nor the definition of "presently exercisable general power of appointment" in Code § 64.2-1600, contains a categorical exclusion that forbids agents from exercising powers of appointment. Instead, what the statutes make clear is that both terms—"power of appointment" and "presently exercisable general power of appointment"—are not *coextensive* with the powers of a fiduciary or an attorney-in-fact.

"When interpreting statutes, courts 'ascertain and give effect to the intention of the legislature.'" *Boynton v. Kilgore*, 271 Va. 220, 227 (2006) (quoting *Chase v. DaimlerChrysler Corp.*, 266 Va. 544, 547 (2002)). "That intent is usually self-evident from the words used in the statute." *Id.* "Consequently, courts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result." *Id.* (citation omitted). "In affording statutory language its plain and ordinary meaning, we remain cognizant of context." *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 206 (2023). "[T]he general rule is that statutes may be considered as *in pari materia* when they relate to the same person or thing,

---

[4] Kosmann also contends that, in its opinion letter, "[t]he [circuit] court stated, 'Defendant claims that [the amended Trust] resulted from [Monroe's] exercise of a power of appointment given to her under the power of attorney.'" (Third alteration in original). Kosmann argues that "the [circuit] court misunderstood [Kosmann's] position on the issue of whether [Monroe] exercised a 'general power of appointment.'" Kosmann clarifies that as she "maintained in her motion for partial summary judgment . . . [Monroe] did not exercise a 'general power of appointment'—neither under the Trust nor the POA." That the circuit court, in boiling down Kosmann's arguments to base elements, may have mischaracterized those arguments could be so, but we need not consider Kosmann's argument, since we review a circuit court's grant of summary judgment de novo. *See GEICO Advantage Ins. Co.*, 301 Va. at 455.

the same class of persons or things or to the same subject or to closely connected subjects or objects." *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129 (1999) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). "Statutes which have the same general or common purpose or parts of the same general plan are also considered as *in pari materia*." *Id.* (quoting *Prillaman*, 199 Va. at 405). Moreover, "[i]t is a common canon of statutory construction that when the legislature uses the same term in separate statutes, the term has the same meaning in each unless the General Assembly indicates to the contrary." *Jenkins v. Mehra*, 281 Va. 37, 48 (2011) (quoting *Commonwealth v. Jackson*, 276 Va. 184, 194 (2008)).

The plain text of the Uniform Trust Code does not support Kosmann's contention that attorneys-in-fact are prohibited from exercising powers of appointment. Instead, the limitation contained in Code § 64.2-701 specifying that a "'[p]ower of appointment' does not include a power of attorney" means what it says: that a power of appointment does not *contain* a power of attorney. *See Include, Black's Law Dictionary* (11th ed. 2019) ("To contain as a part of something."). That is, a power of appointment *is not* a power of attorney. Yet, this distinction imposes no absolute bar that would preclude someone holding a power of attorney from also holding a power of appointment. Indeed, this is a possibility contemplated by other related chapters of the Virginia Code, including the Uniform Power of Attorney Act and the Uniform Disclaimer of Property Interests Act.[5] *Cf.* Code § 64.2-1622(B) ("*[U]nless the power of attorney*

---

[5] These Acts, like the Uniform Trust Code, are all found in Title 64.2 and concern similar, overlapping subject matter—wills, trusts, and fiduciaries. Each of the referenced Acts, and the provisions contained within them, are not isolated fragments of law, standing outside of the statutory scheme under Title 64.2, but rather, combine to create a harmonious system of law. Thus, we use provisions of those Acts, and related others, as aids in construing the definitions Kosmann references and in adjudicating Kosmann's argument that fiduciaries cannot hold a power of appointment. *See Lucy*, 258 Va. at 129 (noting that "statutes may be considered as *in pari materia* when they relate to the same person or thing, the same class of persons or things or to the same subject or to closely connected subjects or objects" (quoting *Prillaman*, 199 Va. at 405)).

*otherwise provides*, an agent that is not an ancestor, spouse, or descendant of the principal may not exercise authority under a power of attorney to create in the agent . . . an interest in the principal's property, whether by gift, right of survivorship, beneficiary designation, disclaimer, or otherwise." (emphasis added)); Code § 64.2-1632(B)(3) ("Unless the power of attorney otherwise provides, . . . a power of attorney granting general authority with respect to . . . trusts . . . authorizes the agent to . . . [e]xercise for the benefit of the principal *a presently exercisable general power of appointment* held by the principal." (emphasis added)); Code § 64.2-2603(B) ("Except to the extent a fiduciary's right to disclaim is expressly . . . limited by another statute of the Commonwealth or by the instrument creating the fiduciary relationship, a fiduciary may disclaim . . . any interest in or power over property, *including a power of appointment*, whether acting in a personal or representative capacity." (emphasis added)).[6]

Rather, Code § 64.2-701 specifies that when exercising a power of appointment, the powerholder is acting in a nonfiduciary capacity. *See* Code § 64.2-701 ("[A power of appointment] enables a powerholder acting *in a nonfiduciary capacity* to designate a recipient of an ownership interest in or another power of appointment over the appointive property." (emphasis added)); Robert T. Danforth, *Article Five of the UTC and the Future of Creditors' Rights in Trusts*, 27 Cardozo L. Rev. 2551, 2559 n.196 (2006) ("A power of appointment is not a fiduciary power and thus may be exercised arbitrarily, as long as it is exercised consistent with its terms."); Restatement (Third) of Trusts § 50 cmt. a ("[A power of appointment] is not subject to fiduciary obligations and may be exercised arbitrarily within the scope of the power."). It

---

[6] The Uniform Disclaimer of Property Interests Act defines "fiduciary" to mean "a personal representative, trustee, agent acting under a power of attorney, or other person authorized to act as a fiduciary with respect to the property of another person." Code § 64.2-2600.

follows that a power of appointment does not "include" a power of attorney because someone

acting under a power of attorney is an agent, and, thus, a fiduciary.

Nonetheless, as noted, Code § 64.2-701 contains no prohibition preventing an

attorney-in-fact from being authorized to exercise a power of appointment. Although a

somewhat paradoxical result, it is conceivable that, under Virginia law, someone operating with

a power of attorney could exercise a power of appointment.[7] *See* Code § 64.2-751(E) ("A

settlor's powers with respect to revocation, amendment, or distribution of trust property may be

exercised by an agent, acting in accordance with § 64.2-1612, under a power of attorney that

expressly authorizes such action except to the extent expressly prohibited by the terms of the

---

[7] Code § 64.2-2707, under the Uniform Powers of Appointment Act, delineates the process for the creation of a power of appointment; in so doing, the statute does not preclude an attorney-in-fact from holding a power of appointment. Code § 64.2-2707 provides,

A. A power of appointment is created only if:

1. The instrument creating the power:

a. Is valid under applicable law; and

b. Except as otherwise provided in subsection B, transfers the appointive property; and

2. The terms of the instrument creating the power manifest the donor's intent to create in a powerholder a power of appointment over the appointive property exercisable in favor of a permissible appointee.

B. Subdivision A 1 b does not apply to the creation of a power of appointment by the exercise of a power of appointment.

C. A power of appointment may not be created in a deceased individual.

D. Subject to an applicable rule against perpetuities, a power of appointment may be created in an unborn or unascertained powerholder.

trust."); *see also, e.g.*, *Stafford v. Crane*, 382 F.3d 1175, 1183 (10th Cir. 2004) ("The general weight of authority suggests that the power to create, modify, or revoke a trust is personal and non-delegable to an attorney-in-fact unless expressly granted in the power-of-attorney.").[8] However, in exercising a power of appointment, an attorney-in-fact would still be bound to (i) "[a]*ct in accordance with the principal's reasonable expectations to the extent actually known by the agent* and, otherwise, in the principal's best interests"; (ii) "[a]ct in good faith"; and (iii) "[a]*ct only within the scope of authority granted in the power of attorney*." Code § 64.2-1612(A) (emphases added). In other words, an authorized attorney-in-fact would still need to exercise the power consistent with its terms—a constraint that governs all such powerholders.

Similarly, although a presently exercisable general power of appointment under the Uniform Power of Attorney Act "does not include a power exercisable in a fiduciary capacity," Code § 64.2-1600, an attorney-in-fact may nevertheless, under the Act, hold a presently exercisable general power of appointment, so long as the power of attorney does not provide otherwise, and there is "language in [the] power of attorney granting general authority with respect to estates, trusts, and other beneficial interests." *See* Code § 64.2-1632(B)(3). Hence, although a presently exercisable general power of appointment "does not include a power exercisable in a fiduciary capacity," an attorney-in-fact may nevertheless, *if authorized*, hold such a power.

Thus, the premise underpinning Kosmann's argument, that an attorney-in-fact is precluded from holding a power of appointment, is mistaken. Rather, it is merely the case that a

---

[8]    In modern law, as reflected in this Restatement and in the Restatement Third of Trusts, a power to revoke or amend a trust or a power to withdraw principal from a trust is recognized as a power of appointment over the principal of the trust, whether the power is reserved by the transferor or conferred on another.

Restatement (Third) of Property: Wills and Other Donative Transfers § 17.1 cmt. e.

power of attorney does not *inhere* in a power of appointment or a presently exercisable general power of appointment. Or, put differently, someone acting under a power of attorney may not, *by default*, exercise a power of appointment.[9]

B. *The plain text of the Trust Agreement precluded Monroe, as Brown's attorney-in-fact, from exercising any right or power that would constitute a general power of appointment.*

But even if we were to adopt Kosmann's gloss on the statutes at issue and assume the position that a "general power of appointment" cannot, as a matter of statutory definition, be exercised by an attorney-in-fact, Kosmann's argument still could not prevail. Kosmann's argument that Monroe could not, as Brown's attorney-in-fact, exercise a general power of appointment runs headlong into the plain text of the Trust Agreement, which expressly contemplates such an exercise. In other words, Kosmann's argument that Monroe could not, under statute, exercise a general power of appointment is of no moment, since Brown intended, through her Trust Agreement, to prohibit her attorney-in-fact from exercising such a power, and it is Brown's intent, not the statutory definitions Kosmann references, that controls here.

"In considering the language of a trust agreement, the intent of the grantor controls." *Harbour v. SunTrust Bank*, 278 Va. 514, 519 (2009). "We initially ascertain the grantor's intent by reviewing the language that the grantor used in the trust instrument." *Id.* "If that language is

_____

[9] Kosmann also seems to rely on *Reineck v. Lemens*, 292 Va. 710 (2016), to argue that Code § 64.2-751(E) authorized Monroe to amend the Trust. Kosmann's reliance on *Reineck* is misplaced. *Reineck* bears no resemblance to this case. In *Reineck*, the Supreme Court determined that an attorney-in-fact "could make instruments, including *inter vivos* trusts" disinheriting certain prospective heirs. 292 Va. at 717. But *Reineck* does not address the dispositive issue *here*: whether Brown's Trust Agreement imposed limitations narrowing the scope of Monroe's power of attorney, such that Monroe could not, when acting as Brown's attorney-in-fact, exercise a general power of appointment. Instead, the Court, in *Reineck*, needed only consider the scope of what the power of attorney was in that case. Here, the question is not whether Monroe acted within the scope of the rights conferred on her as Brown's attorney-in-fact. Rather, the question is whether, in amending the Trust, Monroe violated the general-power-of-appointment provision contained in Article 4, Section 4 of the Trust Agreement.

clear and unambiguous, we will not resort to rules of construction, and we will not consider the grantor's apparent reasoning or motivation in choosing the particular language employed." *Id.* "Instead, in such instances, we will apply the plain meaning of the words that the grantor used." *Id.* That is, "[a]s with other written instruments, '[t]he primary significance of words should ordinarily attach and does attach, unless it is manifest from the [instrument] itself that other definitions are intended.'" *Riverside Healthcare Ass'n, Inc. v. Forbes*, 281 Va. 522, 529 (2011) (second and third alteration in original) (quoting *Wallace v. Wallace*, 168 Va. 216, 224 (1937)).

Further, "[i]n ascertaining th[e] [grantor's] intention, we must examine the document as a whole and give effect, so far as possible, to all its parts." *Frazer v. Millington*, 252 Va. 195, 199 (1996). In other words, "the agreement must stand or fall on its own terms." *Ballard v. McCoy*, 247 Va. 513, 517 (1994). In ascertaining the grantor's intention, an appellate court is not "bound by the [circuit] court's interpretation of the contract provision at issue; rather, we have equal opportunity to consider the words of the contract within the four corners of the instrument itself." *Eure v. Norfolk Shipbuilding & Drydock Corp., Inc.*, 263 Va. 624, 631 (2002); *see also Riverside Healthcare Ass'n, Inc.*, 281 Va. at 528.

The Trust Agreement provides that any right or power may be exercised by an attorney-in-fact "*other than* (i) an amendment by Will, or (ii) any right or power that would constitute a general power of appointment *if held by my Attorney-in-Fact*." (Emphases added). Accordingly, the Trust Agreement expressly contemplates a conceptual possibility foreclosed by Kosmann's argument: an attorney-in-fact exercising a right or power that would constitute a general power of appointment. The Trust Agreement expressly proscribes such an exercise of power, stating that any right or power may be exercised by an attorney-in-fact *unless* it "would constitute a general power of appointment."

And although Kosmann is correct that, under the Trust Agreement, and arguably under Brown's power of attorney, an attorney-in-fact may "take broad actions concerning that Trust," such actions are bounded, and may not exceed the firm limitation established by the Agreement.[10] Code § 64.2-751(E) stands for this very proposition. It provides that "[a] settlor's powers with respect to revocation, amendment, or distribution of trust property may be exercised by an agent, acting in accordance with § 64.2-1612, under a power of attorney that expressly authorizes such action *except to the extent expressly prohibited by the terms of the trust*." Code § 64.2-751(E) (emphasis added). Here, the terms of Brown's Trust precluded the exercise of any right or power whose exercise "would constitute a general power of appointment if held by my Attorney-in-Fact." Thus, the Trust Agreement clearly evinces Brown's intent to guard general powers of appointment closely and carefully. Indeed, the Agreement stands as such a bulwark; as it plainly states, "Other than as provided in this section, [Brown's] powers under [her] Trust Agreement are personal to [her] and may not be exercised by any other person or entity." The Agreement, therefore, bespeaks no intent to permit her attorney-in-fact to exercise the kind of broad, far-reaching power that imbues in the holder of a general power of appointment.

Hence, Brown "impose[d] particular conditions and requirements upon the power and the manner in which it must be exercised" by prohibiting her attorney-in-fact from exercising a general power of appointment. *Holzbach v. United Va. Bank*, 216 Va. 482, 484 (1975) (quoting *Browning v. Bluegrass, Etc., Co.*, 153 Va. 20, 35 (1929)). And this requirement was to be "strictly complied with." *Id.* (quoting *Gaskins v. Finks*, 90 Va. 384, 385 (1894)). Nevertheless,

---

[10] Further, assuming Kosmann's argument that Monroe's Amendment was permitted by the power of attorney, it remains that we first look to the language of the trust instrument, not the power of attorney, to discern the grantor's intent. *See Harbour*, 278 Va. at 519. As Kosmann acknowledges on brief, although Article 4, Section 4 of the Trust Agreement authorized Monroe, as Brown's attorney-in-fact, "to take broad actions concerning the Trust, including any amendment," it expressly prohibited "an exercise of a 'general power of appointment.'"

in amending the Trust, Monroe violated this requirement, taking actions that, in substance, constituted an exercise of a general power of appointment, i.e., were the exercise of right or power "in favor of a powerholder, the powerholder's estate, a creditor of the powerholder, or a creditor of the powerholder's estate." Code § 64.2-701.

Monroe's Amendment named Monroe and Kosmann as initial trustees and removed Brown as an initial trustee and Seamans as a successor trustee, while requiring that any "remaining trust property [be distributed] to Kimberly P. Monroe outright, free of trust," and providing that if "Monroe is deceased," the "Trustee shall distribute" any "remaining trust property to the then acting Trustee of the Monroe Living Trust[.]" The Amendment also made the Trust, and thus Monroe's revisions, irrevocable.

While it is true that Monroe stood to inherit the remainder of the Trust, Monroe's Amendment rewired the Trust, as to lock in an arrangement redounding to the favor of Monroe and, in particular, Monroe's estate.[11] *See* Code § 64.2-701 (defining "general power of appointment" to mean, in pertinent part, "a power of appointment exercisable in favor of a powerholder" or "the powerholder's estate"). Hence, because the changes Monroe made to the Trust were undisputedly in Monroe's favor, and Monroe signed the Amendment as Brown's attorney-in-fact, the Amendment is invalid and so unenforceable, since it conflicts with Article 4, Section 4 of the Trust Agreement. *See Fredericksburg Ambulatory Surgery Ctr., LLC v. Massey*, 79 Va. App. 596, 601 (2024) ("A factual issue is genuinely in dispute when reasonable

---

[11] Kosmann's counsel argued, at oral argument, that Monroe was Brown's "sole heir," and implied that, in effect, the Amendment concretized this status quo ante arrangement by "chang[ing]" "the beneficiary designation from [Monroe] in her personal capacity," to Monroe's trust. Counsel acknowledged that the Amendment was "only in her own favor, [but] not with respect to the raw value of what was transferred," and agreed that the Amendment favored Monroe in form, not in substance. But counsel rejected the relevance of whether the Amendment benefited Monroe, seemingly arguing that such query holds no relevance since Monroe, acting as Brown's attorney-in-fact, could not have, under the relevant statutory definitions, exercised a general power of appointment.

fact[]finders could 'draw different conclusions from the evidence,' not only from the facts asserted but also from the reasonable inferences arising from those facts." (alteration in original) (quoting *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021))).

Accordingly, the circuit court did not err in granting, in part, Brown's motion for summary judgment.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*